Darcy S. TREGO, Relator,

v.

HENNEPIN COUNTY FAMILY DAY CARE ASSOCIATION, Respondent,

Commissioner of Jobs and Training, Respondent.

No. C7-87-4.

Court of Appeals of Minnesota.

July 7, 1987.

David A. Kenney, St. Paul, for relator.

Diane E. Hopkins, Stewart & Zlimen, Ltd., Minneapolis, for respondent Hennepin County Family Day Care Association.

Hubert H. Humphrey, III, Atty. Gen., Donald E. Notvik, Spec. Asst. Atty. Gen., St. Paul, for respondent Commissioner of Jobs and Training.

Heard, considered and decided by WOZNIAK, P.J., LESLIE and MULALLY,* JJ.

## OPINION

EDWARD MULALLY, Acting Judge.

Relator Darcy Trego appeals by writ of certiorari from a determination that she was disqualified from receiving unemployment compensation benefits because she quit her job without good cause attributable to the respondent employer. We affirm.

## FACTS

Darcy Trego was employed as a nutritionist by the Hennepin County Family Day Care Association ("Association") from 1980 through May 1986. She is a registered dietitian, with a Bachelors degree in home economics and a Masters degree in public health.

On December 31, 1985 or January 1, 1986, due to claims of deficiencies in the program, irregularities in administration, and financial mismanagement resulting in a deficit alleged to be $86,000, the executive director of the Association was discharged. An interim director was appointed and served through March 1986, when he resigned. At that time, Trego applied for the position of interim director, but the Association's community coordinator was appointed to the position. There is evidence in the record that Trego was unhappy with the board's choice, and did not get along well with the new interim director.

In early April, one of the front office employees resigned, and another employee was terminated. The other employees, including Trego, were asked to assist temporarily with the telephones, mail and other receptionist duties, in addition to their regular duties. On April 21, 1986, Trego and her co-workers submitted a letter of grievance to the interim director, complaining that the staffing of the front office was inadequate, that the interim director had been selected in violation of the Association's personnel policies, that their salaries were inadequate even though there was money in the budget, and that they perceived a lack of confidence in their work by the board members. The letter of grievance also noted that Trego's job description had been rewritten and some educational qualifications eliminated.

At the end of April, temporary help was hired to fill in at the front office, but on May 12, several employees, not including Trego, locked the front door and let the telephones go unanswered for an hour in order to attend to their regular duties. At 4:00 that afternoon, the interim director called a meeting to chastise the staff for their actions that day. Trego attended that meeting, and claims the interim director called the whole staff "incompetent and stupid." The interim director, however, recalls that she said she had two choices: to believe the whole staff was stupid and incompetent, or to believe that they intended to injure the Association.

On May 14, the personnel committee responded to the grievance, indicating that temporary help had been hired to staff the front office and that the interim director had been selected because "she was the only qualified employee who could assume the position without negatively affecting [the Association's] ongoing programs." The committee also stated:

> The present unfavorable financial position of [the Association] (in respect to the monies owed [the Minnesota Dept. of Education]) makes it unadvisable to give salary increases at this time. Although

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

monies have been returned to [the Minnesota Dept. of Education], a concern exists that the Association Food Program Budget may run short at the end of the fiscal year if providers continue to withdraw from it. Should that happen, any monies spent that exceed the adjusted amounts would have to be returned, thus increasing the deficit.

* * * The Personnel Committee recommends the parties involved improve their attitudes about working with the other. During the Grievance Hearing the Personnel Committee perceived poor communication to be a primary cause of many of the problems discussed. In the last paragraph of the grievance it was stated the [food program] staff is willing to discuss the program with anyone interested ... it is recommended you initiate such an exchange with the officers you feel are unsupportive. Such a meeting could help each person understand the others position more clearly.

Also, a statement will be given to all Board members reminding them of the need to communicate with staff, volunteers and each other in a dignified, respectful manner.

In conclusion, the Personnel Committee advises any employees who feels he/she cannot work cooperatively with *all* staff, under the direction of [the] Interim Executive Director, to resign. The Association is in a crisis ... divided we fall *united we have a chance.* * * *

(Emphasis in original.)

On May 16, Trego gave notice, and two weeks later she and three other food program employees resigned.

Trego applied for unemployment compensation and a claims deputy determined that she was disqualified from receiving benefits because she had quit without good cause attributable to the Association. Trego appealed to a department referee who, after a hearing, reversed the claims deputy's decision. The referee found that Trego's job description had been arbitrarily rewritten to include receptionist-type duties, that the interim director had labeled her and her coworkers as "incompetent and stupid," and that the Association was generally "not bargaining in good faith" with her. The referee concluded that these reasons constituted good cause for Trego to resign.

The Association appealed to a Commissioner's representative, who reversed the referee's decision. The representative reasoned:

> The record establishes that during the weeks just prior to the claimant's termination, the day care association herein was in a crisis situation. Financial mismanagement by the previous director had left the association's continued funding and, thus, its very existence, in jeopardy. It is within this setting that the claimant's grievances must be assessed.

The representative noted that, under those circumstances, it would have been imprudent to give Trego a raise, and, in any event, Trego had never been promised or guaranteed a raise. Further, the representative characterized the front office situation as a "temporary inconvenience," which had been substantially rectified at the time of Trego's termination. Finally, the representative expressed a disbelief that the interim director had called the staff stupid and incompetent, but noted that even if the statement had been made, it would not have been good cause for Trego's termination. The representative concluded:

> It is abundantly clear from a review of the record that the claimant's disenchantment with her employment was in large part attributable to her disappointment with the employer's choice for director. The evidence shows that the claimant had applied for the position, had not been chosen, and, thereafter, became increasingly disgruntled with her job. The record establishes that the director and the employer's personnel committee remained reasonable and forthright in their dealings with the claimant and responded as best they could to the claimant's grievances in light of the tenuous position of the association.

Trego has appealed, claiming that the unfavorable working conditions constituted good cause to resign.

## ISSUE

Did Trego have good cause to resign from the Association?

## ANALYSIS

Minn.Stat. § 268.09, subd. 1(2) (1986) provides that an employee who voluntarily quits his job is disqualified from receiving unemployment compensation benefits unless the employee had good cause to quit. The employee who resigns has the burden of proving that he did so with good cause attributable to the employer. *Zepp v. Arthur Treacher Fish & Chips, Inc.*, 272 N.W.2d 262 (Minn.1978). The question whether an employee had "good cause attributable to the employer" is one of law; thus this court need not defer to the Commissioner's representative. *Forsberg v. Depth of Field/Fabrics*, 347 N.W.2d 284, 286 (Minn.Ct.App.1984). Factual findings by the Commissioner's representative, however, must be reviewed with deference; this court cannot reweigh the evidence to determine where the preponderance lies. *Nyberg v. R.N. Cardozo & Brother, Inc.*, 243 Minn. 361, 364, 67 N.W.2d 821, 823 (1954).

Here, the representative's memorandum reveals that a major reason for Trego's resignation was her dissatisfaction with the board's choice of interim director. Indeed, the representative noted that after the new interim director was appointed, Trego became increasingly dissatisfied with her job. The record supports this finding: the committee's response to the employees' grievance indicated that poor communication was a primary cause of the employees' problems, and the committee recommended that the parties "improve their attitudes about working with the other."

In *Bongiovanni v. Vanlor Investments*, 370 N.W.2d 697 (Minn.Ct.App.1985), this court indicated that an employee's irreconcilable differences with the employer—i.e.

a personality conflict—does not constitute good cause to quit. *Id.* at 699, citing *Foy v. J.E.K. Industries*, 352 N.W.2d 123 (Minn.Ct.App.1984). Similarly, in *Portz v. Pipestone Skelgas*, 397 N.W.2d 12 (Minn. Ct.App.1986), this court stated: "The phrase 'good cause attributable to the employer' does not encompass situations where an employee experiences irreconcilable differences with others at work or where the employee is simply frustrated or dissatisfied with his working conditions." *Id.* at 14, citing *Bongiovanni* and *Foy*. Here, the record supports the conclusion that Trego's dissatisfaction with the interim director did not constitute good cause to quit.

The other peripheral issues which Trego has raised were adequately addressed by the Commissioner's representative, whose findings are supported by the record. Specifically, the record supports the representative's findings that the Association was in a crisis situation, that it would have been imprudent to grant raises at that time, and that Trego had not been promised or guaranteed a raise.[1] The record also supports the representative's finding that the front office problems had been temporary, and had substantially improved when Trego resigned. Finally, the record supports the representative's implicit finding that the interim director did not call the food staff incompetent and stupid.

 The standard of what constitutes good cause to quit is whether the reason was "compelling, real and not imaginary, substantial and not trifling, reasonable and not whimsical or capricious." *Kratochwill v. Los Primos*, 353 N.W.2d 205, 207 (Minn. Ct.App.1984). We cannot find that the Commissioner's representative erred by determining that Trego failed to meet the above test for good cause to resign. Instead of remaining employed and making an effort to work out her problems as the committee suggested, Trego chose to become unemployed.

---

1. In fact, the record discloses that the food staff had been informed the previous July that there would be insufficient funds for raises that fiscal year.

Finally, we note we do not accept Trego's argument that the resignation of several other food workers proved her resignation was reasonable. Any number of employees might have been unhappy with their working conditions or experienced personality conflicts with the interim director.

## DECISION

The representative's conclusion that Trego did not have good cause to resign is reasonably supported by the findings, and those findings are supported by the record. We do not choose to substitute our judgment for that of the Commissioner's representative.

Affirmed.