**Gordon H. RYKS, Relator,**

v.

**NIEUWSMA LIVESTOCK EQUIPMENT, Wilber B. Nieuwsma, Commissioner of Jobs and Training, Respondents.**

**No. C0-87-491.**

Court of Appeals of Minnesota.

Aug. 11, 1987.

John E. Mack, New London, for Gordon H. Ryks.

Nieuwsma Livestock Equipment, Wilber B. Nieuwsma, pro se.

Hubert H. Humphrey, III, Atty. Gen., Donald E. Notvik, Sp. Asst. Atty. Gen., St. Paul, for Com'r of Jobs and Training.

Considered and decided by POPOVICH, C.J. and NORTON and MULALLY,* JJ., with oral argument waived.

---

*Acting as judge of the Court of Appeals by ap-

## OPINION

NORTON, Judge.

Relator Gordon Ryks seeks review of a determination by the Commissioner of Jobs and Training that he did not have good cause to quit his job with the respondent employer. We affirm.

## FACTS

Relator Gordon Ryks began working for the respondent Nieuwsma Livestock Equipment as a route salesman and repairman in March 1981, when Nieuwsma was awarded a dealership by the Surge Company. For 11½ years prior to that time, Ryks had worked for Willmar Surge, which had previously been the local Surge dealership.

Ryks was hired by Nieuwsma's owner, Bill Nieuwsma, according to the same basic terms and conditions under which he had been employed at Willmar Surge; i.e., a weekly salary plus a six percent commission on sales. Soon, however, Nieuwsma realized that he could not continue to pay Ryks the six percent commission, and Ryks' commission was therefore lowered to five percent. Shortly thereafter, Ryks quit, claiming that he was not even receiving a full five percent commission, since Nieuwsma was only paying him five percent on his net, rather than gross, sales.

Several weeks later, Nieuwsma asked Ryks to return, and the parties negotiated a new employment agreement. On August 8, 1986, however, Ryks again quit, claiming that Nieuwsma had violated the terms of the new agreement.

Ryks filed a claim for unemployment compensation benefits with the Department of Jobs and Training, which was initially denied on the basis that he had voluntarily quit his position without good cause attributable to Nieuwsma. Ryks appealed to a Department referee, who conducted a hearing and took testimony from both parties. At the hearing, Ryks introduced evidence attempting to prove that he had not been paid commissions he was owed for March and April, that he had not been paid

pointment pursuant to Minn. Const. art. 6, § 2.

an extra $300 as promised, that he had been paid less than he deserved for after-hours service calls, that he had not been paid any commissions for sales he made at Nieuwsma's store, that his commissions had not been paid on time, and that after another employee quit, he should have received a raise, because his hours had increased.

Bill Nieuwsma's wife, Melayna, on the other hand, testified that the parties had never agreed Ryks would be paid his commissions at certain times, that Ryks had received the extra $300 which he had been promised, that Ryks was not entitled to commissions for sales he made at the store, that Ryks had not complained about his problems before he quit, and that Ryks had created extra work for himself after the other employee quit, rather than letting Bill Nieuwsma handle it. In fact, Melayna testified that her husband had wanted to do the extra work himself, but that Ryks had told his customers to call him when they needed help, rather than calling the Nieuwsmas. Under examination by the referee, Ryks admitted that on July 11 he had been paid the March and April commissions which he had been promised.

The referee found that Ryks had not introduced sufficient evidence to support his claim that the employment agreement had been breached, and that he had not complained to the Nieuwsmas before he quit. The referee therefore concluded that Ryks had failed to meet his burden of proving good cause to quit. On appeal, a Commissioner's representative affirmed.

### ISSUE

Did Ryks meet his burden of proving that he had good cause to quit his job with Nieuwsma?

### ANALYSIS

Minn.Stat. § 268.09, subd. 1(1)(1986) provides that an employee is disqualified from receiving unemployment compensation benefits if he voluntarily quit his job without good cause attributable to the employer. Ryks admits that he quit his job; thus, the only issue to be resolved is whether he had good cause to do so.

In *Kratochwill v. Los Primos*, 353 N.W.2d 205 (Minn.Ct.App.1984), this court described "good cause" to quit as a reason which is "compelling, real and not imaginary, substantial and not trifling, reasonable and not whimsical or capricious". *Id.* at 207. Irreconcilable differences with an employer do not constitute "good cause" to quit, nor does mere dissatisfaction with working conditions. *Portz v. Pipestone Skelgas*, 397 N.W.2d 12 (Minn.Ct.App. 1986); *Foy v. J.E.K. Industries*, 352 N.W.2d 123 (Minn.Ct.App.1984), *pet. for rev. denied*, (Minn. Nov. 8, 1984). Further, upon several occasions, this court has held that offensive conditions must be reported before an employee quits, to allow the employer an opportunity to correct the problem. *See e.g., Kraft v. Independent Delivery Service*, 376 N.W.2d 758 (Minn.Ct.App. 1985); *Porrazzo v. Nabisco, Inc.*, 360 N.W.2d 662 (Minn.Ct.App.1985). The employee who quits has the burden of proving that he did so with good cause attributable to the employer. *Zepp v. Arthur Treacher Fish & Chips, Inc.*, 272 N.W.2d 262, 263 (Minn. 1978).

Whether an employee had good cause to quit is a question of law which this court may independently review. *Forsberg v. Depth of Field Fabrics*, 347 N.W.2d 284, 286 (Minn.Ct.App.1984). Nevertheless, the Commissioner's factual findings should be sustained on appeal if there is evidence in the record which reasonably supports them. *White v. Metropolitan Medical Center*, 332 N.W.2d 25, 26 (Minn.1983).

Here, each of the Commissioner's findings is supported by the record, and the conclusion that Ryks did not have good cause to quit is supported by the findings and the law.

With regard to the amount of Ryks' commissions, there is no dispute that he had previously been paid six percent. The hiring agreement which Ryks negotiated upon his return to Nieuwsma, however, provided that he would be paid a five percent commission. There is no evidence that the

Nieuwsmas breached this new agreement. Ryks' argument that the terms of his employment were breached or changed because his commission was lowered is based upon his past employment with Willmar Surge and Nieuwsma, which is not relevant here.[1]

Ryks argues that he had good cause to quit because his commissions were not paid in a timely fashion. The Commissioner's finding that Ryks failed to prove this claim is supported by the record. While Ryks argues that Nieuwsma was not paying his commissions according to the schedule he had with Willmar Surge, Melayna Nieuwsma testified: "I don't feel that we really have anything to do with Willmar Surge. He was hired. * * * our business is different than there's. [sic] The job is different than what he had there."

In addition, when Ryks was rehired by Nieuwsma, it was pursuant to the new agreement, which Ryks drew up himself. Ryks claims that when he was rehired by Nieuwsma, it was agreed that he would be paid his commissions more promptly. The agreement does not establish this fact and, in fact, Melayna Nieuwsma testified:

> Well, on these routes, most of the customers charge. The money doesn't in come for a quite a while and we were paying them as the bills were being paid.
>
> *   *   *   *   *   *
>
> [Ryks] stated, * * *, it didn't matter to him if he didn't get it right away because he knew how it was with the checks coming in.
> [Referee] Q. When did he say that?
> A. I would say probably in June when he came back. He said he understood how it was * * *.

Ryks was also unable to prove he was entitled to receive commissions on sales he made while working in Nieuwsma's store. Melayna Nieuwsma specifically testified that Ryks had never been promised commissions for those sales.

Finally, Ryks claims that when another employee quit, his hours were substantially increased, with no commensurate increase in pay. The Commissioner's representative found, however that Ryks "volitionally worked extra hours and gained financially by doing so by increasing his commission-based earnings." The Commissioner's representative also noted that Ryks never apprised the Nieuwsmas that his work hours were too long. Testimony by Melayna Nieuwsma supports these findings.

## DECISION

Relator failed to meet his burden of proving that he had good cause to quit his job.

---

1. Ryks did not claim that Nieuwsma had made an offer of reemployment which was unsuitable. This argument would have properly accompanied a refusal by Ryks to accept reemployment from Nieuwsma. Instead, Ryks accepted reemployment with Nieuwsma under different terms and conditions, which he negotiated himself. We cannot accept his claim that these same conditions which he requested constituted good cause to quit.