Troy M. HASKINS, Relator,

v.

CHOICE AUTO RENTAL, INC., Respondent,

Commissioner of Economic Security, Respondent.

No. C8–96–1685.

Court of Appeals of Minnesota.

Jan. 21, 1997.

Considered and decided by HUSPENI, P.J., and LANSING and FOLEY, JJ.

## OPINION

DANIEL F. FOLEY, Judge.*

In this certiorari appeal, Troy Haskins challenges the Commissioner's representative's decision that he lacked good cause to quit his job with respondent Choice Auto Rental, Inc. Because the Commissioner's representative erred in requiring the employee to complain about his safety specifically to Choice's owners, and because the representative used the wrong standard in determining whether the employee's safety concerns were reasonable, we reverse and remand.

## FACTS

Troy Haskins began working for Choice Auto Rental, Inc. (Choice), a car rental company, in February 1996. The following month, Haskins submitted a letter of resignation, stating that he was quitting because of a mutual agreement that his needs and desires conflicted with those of Choice.

Haskins sought reemployment insurance benefits, claiming that he had quit his job with Choice because of safety concerns and because his managers were unhappy with him. An adjudicator with the Department of Economic Security denied Haskins' request for reemployment benefits, and Haskins appealed to a reemployment insurance judge, who conducted a hearing. Haskins and one of Choice's two owners, Luke Ebnet, testified at the hearing.

Haskins' job was to deliver and return rental cars. In his brief period of employment with Choice, Haskins was involved in two accidents, and his co-workers started calling him "Crash," which annoyed him. He also lost a car key and became the target of jokes by his coworkers.

After Haskins' second accident, Choice's owners asked him to sign an agreement stating that he would pay the first $300 of any

Troy M. Haskins, Eagan, pro se.

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

future loss, whether or not he was at fault.[1] Haskins refused to sign the agreement. He believed that one of Choice's owners was angry with him because of his refusal to sign the agreement, because of the accidents, and because he refused to exceed speed limits to comply with Choice's deadlines.

Haskins complained that Choice violated his employment agreement by requiring him to work Saturday hours, to work late hours, and to push cars to start them in the cold. He claimed that he was discouraged from taking lunch breaks, and was not considered a "team player." Ebnet testified that Haskins was told about the hours and job requirements when he was hired.

Haskins drove a pickup truck with a dolly hooked to a trailer hitch on the back of the truck. To transport Choice's rental cars, Haskins needed to drive the cars up two ramps onto the dolly and strap the cars on the dolly. He claimed that the first dolly that he was assigned had a tail-light out, which was never repaired.

Haskins claimed that after his second accident, he was given a different dolly, which was also unsafe. He testified that the emergency chain from the dolly to the truck broke and was not replaced, even though he complained five or six times to the office manager. He also claimed that the ball on the hitch that held the dolly to the truck was loose for several weeks, because a nut could not be tightened. He complained to the office manager, who promised that the ball would be replaced, but it was not replaced until Haskins' last day of work.

Haskins testified that a spring in the crank handle used to tighten the straps on his dolly was broken, which made the crank slam up and hit his hand. Haskins testified that he complained every day, and after two or three weeks, the office manager looked at the crank and agreed that it should be replaced. The handle was repaired on Haskins' last day of work.

Haskins also claimed that the ramps on his dolly did not work when it was very cold, and he couldn't get a car off the dolly and down the ramps unless he opened the truck door,

put his left foot on the left ramp, and hit the gas while pushing down on the ramp. Haskins testified that this was dangerous, but when he complained to the office manager, he was told that it wasn't a problem and that nobody else had ever complained.

Haskins testified that if he had a question, Choice's owners referred him to the office manager. He testified that he was told not to bring problems to Ebnet. When he brought problems to Choice's other owner, he was told to talk to the office manager.

Ebnet testified that Choice's owners had an open-door policy, and if Haskins had brought any problems to the office manager, the office manager would have discussed the problems with the owners. Ebnet claimed that the dolly was safe and he never knew about Haskins' concerns; if he had, they would have been addressed.

The reemployment insurance judge concluded that Haskins had good cause to quit because of safety concerns that were communicated to, but not addressed by, Choice. Choice appealed to a Commissioner's representative, who reversed, concluding that Haskins did not have good cause to quit.

## ISSUES

I.   Does the record establish that Haskins had a duty to complain to Choice's owners about his safety concerns?

II.   Was Haskins required to prove that the dolly was in fact dangerous?

III.   Did Haskins have good cause to quit because of irreconcilable differences or because of Choice's request that he sign an agreement that he believed was illegal?

## ANALYSIS

■   An employee who voluntarily quits a job without "good cause attributable to the employer" is disqualified from receiving reemployment insurance benefits. Minn. Stat. § 268.09, subd. 1(a) (1996). The employee has the burden of proving good cause to quit. *Marz v. Department of Employment Servs.*, 256 N.W.2d 287, 289 (Minn. 1977).

---

1.   All Choice employees were required to sign the   agreement.

"Good cause" is a reason that is "real, not imaginary, substantial not trifling, and reasonable, not whimsical; there must be some compulsion produced by extraneous and necessitous circumstances." *Ferguson v. Department of Employment Servs.*, 311 Minn. 34, 44, 247 N.W.2d 895, 900, n. 5 (1976). The standard for determining good cause is "the standard of reasonableness as applied to the average man or woman, and not to the supersensitive." *Id.*

## I.

An employee's failure to complain about a serious problem before quitting may foreclose a determination of good cause to quit that is attributable to the employer. *See McNabb v. Cub Foods*, 352 N.W.2d 378, 382 (Minn.1984) ("notice of harassment to management is essential to a claim for benefits"). When an employee complains about an alleged fear of working conditions and receives an expectation of assistance, the employee has a duty to complain further if the conditions persist. *Larson v. Department of Econ. Sec.*, 281 N.W.2d 667, 669 (Minn.1979).

Here, unlike *Larson*, there is no evidence that Haskins complained once and then failed to complain when his problems continued. Rather, he testified that he complained numerous times about several continuing problems with his equipment.

The Commissioner's representative found that although Haskins brought his safety concerns to the attention of the office manager, there was no evidence that he complained to Choice's owners.[2] The Commissioner's representative's factual findings are reviewed to determine whether there is evidence in the record reasonably tending to sustain them. *White v. Metropolitan Medical Ctr.*, 332 N.W.2d 25, 26 (Minn.1983).

Haskins testified that if he had a question, Choice's owners would refer him to the office manager. Haskins testified that he was told not to bring problems to Ebnet, and when he brought problems to Choice's other owner, he was told to talk to the office manager.

Moreover, there was no evidence that Haskins had a duty to complain to Choice's owners. The office manager was apparently, by definition, a "manager," to whom Haskins could justifiably complain. *See Larson*, 281 N.W.2d at 669 (employee has duty to apprise "employer" of fear); *Heaser v. Lerch, Bates & Assoc., Inc.*, 467 N.W.2d 833, 835 (Minn. App.1991) (stating that manager's knowledge is imputed to employer). The record indicates that when Haskins complained, the office manager either promised him new parts or told him that there was not a problem. This suggested that the office manager had the authority to resolve Haskins' problems. There is no evidence to support a finding that the office manager was not the person to whom Haskins should have complained. Ebnet himself stated that the office manager discussed employees' problems with the owners, which supports Haskins' contention that employees were expected to discuss their problems with the office manager.

## II.

The Commissioner's representative found that Haskins quit because he was dissatisfied with his working conditions, especially because he felt that his equipment was unsafe. The Commissioner's representative, however, concluded that Haskins' concerns did not constitute good cause to quit, because it was doubtful that the dolly "was in such a state of disrepair as to pose an imminent danger to life or property."[3]

When examining an objection to working conditions that is based on an employee's safety concerns, the Commissioner's representative should determine whether the employee's concerns were reasonable, based on the information known to the employee at the time; not whether the conditions were "in fact" safe. *See Ferguson*, 311 Minn. at

---

2. The reemployment insurance judge found in his memorandum that Haskins brought up his safety issues "on occasion with one of the owners." But this court must review the Commissioner's representative's findings, rather than the findings of the reemployment insurance judge.

*Tuff v. Knitcraft Corp.*, 526 N.W.2d 50, 51 (Minn. 1995).

3. The reemployment insurance judge found that the problem with the dolly ramps posed a danger.

**512**

45, 247 N.W.2d at 900. In other words, the Commissioner's representative should examine the reasonableness of the employee's concerns.

Here, the Commissioner's representative found that Haskins believed the dolly was unsafe, but did not specifically decide whether Haskins' belief was reasonable, providing him with good cause to quit. Rather, the Commissioner's representative "seriously question[ed] whether the dolly was in such a state of disrepair as to pose an imminent danger to life or property." This was the incorrect standard.

### III.

 Haskins claims that Choice asked him to sign an illegal agreement requiring him to pay a deductible of $300 for any damage to or theft of Choice's property caused by his negligence. Haskins has referred to and appended to his brief the agreement that Choice asked him to sign.[4] Haskins claims that he had good cause to quit as a result of this allegedly illegal request.

Haskins did not raise this issue below; therefore, we decline to consider it on appeal. *See Jaakola v. Duluth/Superior Area Educ. Television Corp.*, 374 N.W.2d 215, 217 (Minn. App.1985) (stating that issues not raised below may not be raised for first time on appeal).

Haskins argued below that Choice's owners were angry with him for refusing to sign the agreement, thereby contributing to a perceived conflict between Haskins and Choice management. But, even if true, this argument would not support a conclusion of good cause to quit. *See Trego v. Hennepin County Family Day Care Ass'n.*, 409 N.W.2d 23, 26 (Minn.App.1987) (employee's dissatisfaction with employer's director did not constitute good cause to quit); *Foy v. J.E.K Indus.*, 352 N.W.2d 123 (Minn.App.1984) (personality conflicts or irreconcilable differences between employee and employer did

not provide employee with good cause to quit), *review denied* (Minn. Nov. 8, 1984).

### DECISION

The record does not indicate that Haskins had a duty to complain about his safety concerns to Choice's owners. The Commissioner's representative erred by failing to determine whether Haskins' concerns were reasonable based on the information known to him at the time.

**Reversed and remanded.**

---

4. This agreement was not made a part of the record below. An appellate court should not decide an issue based on matters outside the record; matters not produced and received in evidence below may not be considered on appeal. *Plowman v. Copeland, Buhl & Co., Ltd.,* 261 N.W.2d 581, 583 (Minn.1977).