*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1249**

Robert S. Paxton,
Relator,

vs.

Ind. School District #047,
Respondent,

Department of Employment and Economic Development,
Respondent

**Filed February 17, 2015
Affirmed
Worke, Judge**

Department of Employment and Economic Development
File No. 32295225-3

Robert S. Paxton, Sauk Rapids, Minnesota (pro se relator)

Michael J. Waldspurger, Trevor S. Helmers, Abby M. Novak, Rupp Anderson Squires & Waldspurger, P.A., Minneapolis, Minnesota (for respondent school district)

Lee B. Nelson, Department of Employment and Economic Development, Minneapolis, Minnesota (for respondent department)

Considered and decided by Reyes, Presiding Judge; Worke, Judge; and Johnson, Judge.

**WORKE**, Judge

Relator challenges the unemployment-law judge's (ULJ) decision that he did not have a good reason to quit caused by his employer and that certain subpoenaed records were irrelevant. We affirm.

## D E C I S I O N

### *Good reason caused by employer*

Relator Robert S. Paxton argues that he is eligible for unemployment benefits because he had a good reason to quit his position as head janitor caused by his employer, respondent Independent School District #47.

This court may remand, reverse, or modify a ULJ's decision if the substantial rights of the relator may have been prejudiced because the findings, conclusion, or decision are unsupported by substantial evidence. Minn. Stat. § 268.105, subd. 7(d)(5) (2014). The reason an employee quit is a question of fact. *See Midland Elec., Inc. v. Johnson*, 372 N.W.2d 810, 812 (Minn. App. 1985). The ULJ's findings are viewed in the light most favorable to the decision and will not be disturbed if substantially supported by the record. *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006). Whether an employee had a good reason to quit caused by the employer is a question of law, reviewed de novo. *Rowan v. Dream It, Inc.*, 812 N.W.2d 879, 883 (Minn. App. 2012).

"An applicant who quit employment is ineligible for all unemployment benefits . . . except when . . . the applicant quit the employment because of a good reason caused

2

by the employer . . . ." Minn. Stat. § 268.095, subd. 1(1) (2014). A good reason caused by the employer is a reason "(1) that is directly related to the employment and for which the employer is responsible; (2) that is adverse to the worker; and (3) that would compel an average, reasonable worker to quit and become unemployed rather than remaining in the employment." *Id*., subd. 3(a) (2014). The reasonable-worker standard is objective and is applied to the average person rather than the supersensitive. *Ferguson v. Dep't of Employment Servs.*, 311 Minn. 34, 44 n.5, 247 N.W.2d 895, 900 n.5 (1976). "[T]here must be some compulsion produced by extraneous and necessitous circumstances." *Id.* "Irreconcilable differences with an employer do not constitute 'good cause' to quit, nor does mere dissatisfaction with working conditions." *Ryks v. Nieuwsma Livestock Equip.*, 410 N.W.2d 380, 382 (Minn. App. 1987).

The ULJ found that Paxton quit for four reasons and concluded that none was a good reason caused by the employer: (1) poor relations with subordinates; (2) disciplinary action taken against Paxton; (3) e-mail exchanges Paxton discovered between coworkers that he believed constituted harassment; and (4) a negotiated severance package. The record supports the ULJ's decision that Paxton quit employment without a good reason caused by the employer.

First, Paxton testified about why he felt that subordinates were derogatory, disrespectful, or worse, but admitted that he had authority to discipline subordinates. More often than not, Paxton failed to discipline, instead complaining to his managers who addressed his concerns.

3

Second, Paxton admitted to several incidents that resulted in disciplinary action. He testified that following his reprimand he worried that he would be terminated. While disciplinary actions are adverse, there is no evidence that Paxton's termination was imminent. A disciplinary warning would not lead an average, reasonable worker to quit and become unemployed.

Third, Paxton discovered the e-mails in September 2013 and did not quit until the following month. Additionally, Paxton used the e-mails as part of a formal harassment complaint, but the evidence substantially supports the ULJ's conclusion that the e-mails were not so adverse as to constitute harassment which would compel an average worker to quit.

Finally, the record substantially supports the ULJ's finding that the severance package negotiated by Paxton was a reason that he quit. Paxton testified that, despite rejection of his harassment claim, he felt that the e-mails were a "bargaining chip" that he could use to his benefit in negotiating a severance package. He quit shortly after negotiating a severance package equivalent to 50 days of his salary. Such a severance package is not adverse to an employee, and so cannot constitute a reason to quit caused by the employer.

*Subpoena*

Paxton also contends that it was reversible error to deny his request to subpoena certain personnel files because they could have supported his claim that he quit due to a hostile work environment. Paxton requested the files to determine whether his subordinate was disciplined for drafting the e-mails that Paxton felt were derogatory. If

4

the subordinate was not disciplined, Paxton contends, it would be an indication of unfair treatment. Whether to issue a subpoena is within a ULJ's "sound discretion" and "we will not reverse the decision absent an abuse of discretion." *Icenhower v. Total Auto., Inc.*, 845 N.W.2d 849, 853 (Minn. App. 2014), *review denied* (Minn. July 15, 2014).

"The [ULJ] may issue subpoenas to compel . . . the production of documents . . . upon a showing of necessity by the requesting party." Minn. R. 3310.2914, subp. 1 (Supp. 2014). "A request for a subpoena may be denied if the testimony or documents sought would be irrelevant, immaterial, or unduly cumulative or repetitious." *Id.*

We conclude that the ULJ properly denied Paxton's requested subpoenas as irrelevant. Paxton quit in the absence of any knowledge of whether his subordinate had been disciplined. Additionally, while the record shows that Paxton's relationship with the coworker in question was acrimonious, there is no indication of favoritism on the part of the employer to support an assertion of unfairness.

**Affirmed.**