*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-2119**

Lamont P. Mays,
Relator,

vs.

Rosenbauer Motors, LLC,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed August 10, 2015
Affirmed
Connolly, Judge**

Department of Employment and Economic Development
File No. 32791666-3

Lamont P. Mays, Minneapolis, Minnesota (pro se relator)

Rosenbauer Motors, LLC, Wyoming, Minnesota (respondent)

Lee B. Nelson, Dennis D. Evans, Minnesota Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

Considered and decided by Kirk, Presiding Judge; Connolly, Judge; and Chutich, Judge.

**CONNOLLY**, Judge

In this certiorari appeal, relator requests reversal of the decision of an unemployment-law judge (ULJ) that he is ineligible for unemployment benefits. He argues that he quit his employment due to a good reason caused by the employer. We affirm.

## FACTS

In December 2012, relator Lamont P. Mays began working for respondent Rosenbauer Motors LLC (Rosenbauer), which builds fire trucks, cabs, and chassis. Relator was initially hired as a temp, but became a full-time employee in February 2013. He was hired as a painter, but ended up primarily doing paint prep work because he did not consistently perform well on painting projects. He had a difficult working relationship with some of his coworkers. In January 2014, a coworker, T.J., made several racist and offensive comments to relator. Management was notified and T.J. was fired the next day.

Relator also had a strained relationship with Troy Mickelson. At some point during relator's employment Mickelson was promoted and became relator's supervisor. In July 2014, relator filed a harassment complaint against Mickelson. Shannon Huberty, the HR Manager, investigated the harassment allegations, interviewed various employees, and issued a written report. She concluded that the allegations of harassment were unfounded, but issued a four-page report that included recommendations on how to improve communication between relator and Mickelson, addressed other complaints

made by relator, and committed to monitoring the situation and reassessing it in the following months. Relator felt the investigation and response to his complaint were inadequate and quit.

Relator applied for unemployment benefits, and respondent Minnesota Department of Employment and Economic Development (DEED) determined that he was eligible. Rosenbauer appealed the determination, arguing that relator did not have a good reason to quit his employment. Following a telephone hearing, the ULJ determined that relator quit for reasons other than a good reason caused by the employer and is ineligible for benefits. Relator requested reconsideration and submitted additional evidence. The ULJ determined that the new evidence did not warrant a new hearing and affirmed the decision that relator is ineligible for benefits. Relator appeals.

## D E C I S I O N

When reviewing a ULJ's eligibility decision, we may affirm, remand for further proceedings, or reverse or modify the decision if the substantial rights of the relator have been prejudiced because the findings, inferences, conclusion, or decision are affected by an error of law or are unsupported by substantial evidence. Minn. Stat. § 268.105, subd. 7(d)(4)-(5) (2014). Factual findings are viewed in the light most favorable to the ULJ's decision, and we will not disturb them if they are substantially supported by the evidence in the record. *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006).

An applicant for unemployment benefits is ineligible for benefits if he quit his employment, unless he quit "because of a good reason caused by the employer." Minn. Stat. § 268.095, subd. 1(1) (2014). To qualify for this exception, the reason must be

3

(1) directly related to the employment and for which the employer is responsible; (2) adverse to the employee; and (3) one that would compel an average, reasonable employee to quit and become unemployed rather than remaining in employment. Minn. Stat. § 268.095, subd. 3(a) (2014). If the applicant was subjected to adverse working conditions he must complain to his employer and "give the employer a reasonable opportunity to correct the adverse working conditions before that may be considered a good reason caused by the employer for quitting." *Id.*, subd. 3(c) (2014). Whether an employee had a good reason to quit caused by the employer is a question of law, reviewed de novo. *Rowan v. Dream It, Inc.*, 812 N.W.2d 879, 883 (Minn. App. 2012). But the reason an employee quit is a question of fact. *See Beyer v. Heavy Duty Air, Inc.*, 393 N.W.2d 380, 382 (Minn. App. 1986) (reviewing a determination of the reason an employee quit as a fact question). The conclusion that an employee did not have a good reason to quit must be based on factual findings supported by substantial evidence. *Nichols v. Reliant Eng'g & Mfg., Inc.*, 720 N.W.2d 590, 594 (Minn. App. 2006).

Relator argues that he had a good reason to quit caused by the employer because he was subjected to racial harassment and unfair treatment from his coworkers. The ULJ determined that relator "did experience some racist comments," but that management handled the issue in a reasonable manner when it promptly fired T.J. after learning of the comments. The ULJ found that relator's remaining complaints were not racially motivated but were due to "human interaction within normal personality differences." The ULJ also found that Rosenbauer's investigation into relator's complaint was competent and that the outcome was reasonable.

The record substantially supports the ULJ's finding that relator quit because of a personality conflict with Mickelson. It is clear from the record that relator had a problem with Mickelson's leadership style. But these concerns do not amount to a good reason for quitting. "Irreconcilable differences with an employer do not constitute 'good cause' to quit, nor does mere dissatisfaction with working conditions." *Ryks v. Nieuwsma Livestock Equip.*, 410 N.W.2d 380, 382 (Minn. App. 1987). Relator's complaints can fairly be characterized as irreconcilable differences with Mickelson and dissatisfaction with his working conditions. Relator felt that Mickelson had a short temper and took issue with Mickelson calling himself relator's "boss." However, Mickelson was relator's supervisor and had supervisory authority over him. Relator was also dissatisfied because he thought Mickelson should have been written up on various occasions. But during the hearing the production manager testified that discipline was not made public, and at least one of the incidents that relator felt should have resulted in Mickelson getting written up did in fact result in Mickelson getting punished more severely than relator. The record makes it clear that relator and Mickelson had many disagreements, but none constituted a good reason for quitting.

Many of relator's other complaints reflect dissatisfaction with his working conditions. He felt that he was not receiving the level of training he had expected. He also felt that Mickelson treated him unfairly by only enforcing the company's no-earbuds policy against him and punishing him for refusing jobs by making him sweep and clean various areas. Being asked to and choosing to comply with a company policy is not a good reason to quit. And Mickelson testified that relator was asked to sweep and clean

5

after refusing to do a sanding job because cleaning was the only other job available that night. The paint shop supervisor also testified that general cleaning was the only other assignment available that night, and that relator is not the only employee who was assigned general cleaning projects. While relator perceived this as a punishment for refusing the sanding job, the paint shop supervisor testified that assigning relator the cleaning job was the only alternative to sending him home early, which would have decreased his pay. Relator may have been dissatisfied with being asked to clean and told not to wear earbuds, but these are not good reasons to quit his employment.

On appeal, relator argues that Mickelson also made racist comments to him. However, the ULJ found that, while relator experienced racist comments made by T.J., those comments ceased after T.J. was fired. The record substantially supports this finding. Also, Huberty, the HR manager, testified that any alleged inappropriate or racist comments made by Mickelson were "never brought to [her] attention." Huberty stated she was aware of the comments made by T.J. that resulted in him being fired, but not any statements made by Mickelson. She stated that relator's complaint against Mickelson focused on his yelling, inconsistent enforcement of company policies, and unclear directives on job assignments. Her report responds to these concerns. Dan Kellogg, the production manager, similarly testified that relator's complaints about Mickelson were never based on racial harassment. Further, apart from the comments attributed to T.J., relator's remaining allegations made during the hearing are vague and not attributed to

specific coworkers.[1] The record supports the ULJ's determination that relator quit because of a personality conflict with Mickelson, not because of racial harassment by him.

Finally, an applicant who is subjected to adverse working conditions must complain to his employer and give the employer a reasonable opportunity to correct the conditions before such conditions may be considered a good cause for quitting. Minn. Stat. § 268.095, subd. 3. The ULJ determined that Huberty's investigation into relator's complaints produced a reasonable result. The report recommended that the no-earbud policy be reviewed so that all employees would understand it and that job assignments be posted in advance so the employees would have a better understanding of what was expected of them. It also outlined what relator would have to do to transfer to a different shift, which relator had requested. As noted above, it appears that relator never complained during his employment that he was being subjected to racial harassment from Mickelson. Thus, Rosenbauer responded reasonably to the alleged adverse conditions it was made aware of and was never given an opportunity to address the allegations of racial harassment by Mickelson. Therefore the conditions cannot be considered good cause for quitting.

---

[1] During the hearing relator attributed one specific statement to Mickelson, but stated that it "wasn't racially motivated." Relator included some specific incidents in his briefs on appeal, but these incidents were not mentioned during the initial hearing and therefore are not part of the record. *See* Minn. R. Civ. App. P. 110.01 ("The documents filed in the trial court, the exhibits, and the transcript of the proceedings, if any, shall constitute the record on appeal in all cases.").

In sum, relator did not have a good reason caused by his employer for quitting and is ineligible for benefits.

**Affirmed.**