*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0994**

Orin Vann,
Relator,

vs.

Texas Roadhouse Holdings LLC - Texas Roadhouse,
Respondent,

Department of Employment and Economic Development,
Respondent

**Filed March 7, 2016
Affirmed
Worke, Judge**

Department of Employment and Economic Development
File No. 33404024-3

Orin B. Vann, Duluth, Minnesota (pro se relator)

Texas Roadhouse Holdings LLC-Texas Roadhouse, c/o TALX, St. Louis, Missouri (respondent employer)

Lee B. Nelson, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

Considered and decided by Worke, Presiding Judge; Schellhas, Judge; and Johnson, Judge.

UNPUBLISHED OPINION

**WORKE**, Judge

Relator challenges an unemployment-law judge's (ULJ) decision that he quit employment without a good reason caused by his employer and is ineligible for unemployment benefits. We affirm.

## DECISION

On review, we may affirm, modify, or reverse the decision of the ULJ or remand the case for further proceedings if the substantial rights of the relator may have been prejudiced because the findings, inferences, or decision are unsupported by substantial evidence in the record, or are arbitrary or capricious. Minn. Stat. § 268.105, subd. 7(d)(5)-(6) (Supp. 2015).

There is no dispute that relator Orin Vann quit his food-service position at respondent-employer Texas Roadhouse. An individual who quit employment is ineligible for unemployment benefits, unless, as relevant here, he quit "because of a good reason caused by the employer." Minn. Stat. § 268.095, subd. 1(1) (2014). A good reason caused by the employer is (1) directly related to the employment and for which the employer is responsible; (2) adverse to the employee; and (3) one that would compel an average, reasonable employee to quit and become unemployed rather than remaining in employment. *Id.*, subd. 3(a) (2014). An employee subjected to adverse working conditions must complain to the employer and "give the employer a reasonable opportunity to correct the adverse working conditions before that may be considered a good reason caused by the employer for quitting." *Id.*, subd. 3(c) (2014).

The reason an employee quit is a question of fact. *See Beyer v. Heavy Duty Air, Inc.*, 393 N.W.2d 380, 382 (Minn. App. 1986) (reviewing a determination of the reason an employee quit as a fact question). But whether the reason was a good reason to quit caused by the employer is a question of law, reviewed de novo. *Rowan v. Dream It, Inc.*, 812 N.W.2d 879, 883 (Minn. App. 2012). The conclusion that an employee did not have a good reason to quit must be based on factual findings supported by substantial evidence. *Nichols v. Reliant Eng'g & Mfg., Inc.*, 720 N.W.2d 590, 594 (Minn. App. 2006).

Vann argues that he quit after the kitchen manager relabeled expired food, which was an affront to his commitment to customer safety, concerns for company liability, and legal food and safety requirements. The ULJ found that Vann quit because he did not get along with the kitchen manager. The evidence supports the ULJ's finding.

Vann testified that he quit because he was "having too many personal conflicts with the kitchen manager" relating to Vann's son who also worked at Texas Roadhouse. Both Vann and his son reported to the kitchen manager. Vann described three incidents, two of which occurred in 2013. The first involved the kitchen manager allegedly attempting to access Vann's son's phone, the second involved the kitchen manager allegedly attempting to discuss Vann's son's sex life with Vann's son. Vann reported the incidents to Mario Ruiz, managing partner of Texas Roadhouse. Ruiz testified that the kitchen manager denied the allegations, claiming that he disconnected the phone from the speaker system to stop it from playing music, and that he never attempted to have a discussion sexual in nature with Vann's son.

3

The final incident occurred on January 13, 2015. The kitchen manager disciplined Vann's son for failing to follow the prep list. Vann claimed that the next morning, he noticed that the kitchen manager relabeled expired food. He reported the incident to Ruiz. The kitchen manager explained to Ruiz that the restaurant ran out of items that Vann's son did not prep, and that the kitchen manager prepared those items that night, but did not label them until the following morning.

Vann testified that he quit because "due to all the prior issues it was more than enough to where [he] felt that [the kitchen manager's actions caused] too many problems, [and they] could no longer work together." This testimony has nothing to do with the kitchen manager allegedly relabeling expired food; rather, it supports the ULJ's finding that Vann quit because he did not get along with the kitchen manager.

Additionally, Vann testified, "If you tell me I can't reuse [expired food] I don't see where it gives you the right to reuse it. So that is a conflict of interest to me." This statement belies Vann's assertion that he quit because he is committed to food safety. This statement shows that he merely rejects the idea that his manager can reuse expired food when he cannot. Moreover, Vann failed to prove that the kitchen manager relabeled expired food. Ruiz investigated, but was unable to conclude that the kitchen manager had done anything inappropriate. The ULJ believed the kitchen manager's explanation, and found that the kitchen manager "did not relabel expired product." Conversely, the ULJ did not believe Vann's testimony because it "did not follow a logical sequence of events." For example, Vann claimed to have photographed the food on January 13, but stated that it was not relabeled until January 14, and he did not show the photos to Ruiz

4

or offer them into evidence. This court defers to the ULJ's credibility determinations. *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006).

We must now determine whether Vann quitting because he did not get along with the kitchen manager was a good reason to quit caused by the employer. Personality conflicts with an employer or supervisor do not create good reason to quit. *Ryks v. Nieuwsma Livestock Equip.*, 410 N.W.2d 380, 381-82 (Minn. App. 1987); *Portz v. Pipestone Skelgas*, 397 N.W.2d 12, 14 (Minn. App. 1986) (stating that dissatisfaction with supervisor and working conditions does not constitute good cause to quit). When adverse working conditions arise out of a personality conflict with a supervisor, the employee must report this conflict to the employer before using the conflict to justify quitting. *Ryks*, 410 N.W.2d at 382. Vann reported the incidents to Ruiz who addressed them with the kitchen manager. Ruiz investigated the relabeled-food incident, but could not conclude that the kitchen manager relabeled food.

Even if Vann quit because the kitchen manager relabeled food, it would not be a good reason caused by the employer because it would not compel an average, reasonable employee to quit and become unemployed. *See* Minn. Stat. § 268.095, subd. 3(a). As the ULJ found, Vann might have had a good personal reason to quit, but he did not have a good reason caused by the employer. *See Werner v. Med. Prof'ls LLC*, 782 N.W.2d 840, 842 (Minn. App. 2010) ("While an employee may have a good personal reason for quitting, it does not necessarily constitute a good reason caused by the employer for quitting."), *review denied* (Minn. Aug. 10, 2010).

**Affirmed.**

5