Kevin CHERVENY, Relator,

v.

10,000 AUTO PARTS, Respondent,

and

Commissioner of Economic Security, Respondent.

No. C2-84-686.

Court of Appeals of Minnesota.

Aug. 28, 1984.

Ann Richtman, St. Paul, for relator.

Thomas Miller, Minneapolis, for respondent, 10,000 Auto Parts.

Hubert H. Humphrey, III, Atty. Gen., Regina M. Chu, Sp. Asst. Atty. Gen., St. Paul, for respondent, Com'r of Economic Sec.

Considered and decided by POPOVICH, C.J., and PARKER and CRIPPEN, JJ., with oral argument waived.

## OPINION

PARKER, Judge.

Relator was discharged for attempting to return purchased auto parts without a receipt and for dishonesty in an investigation by the employer. In relator's claim for unemployment compensation benefits, an appeals referee ruled there was insufficient evidence to establish any misconduct. On appeal, the representative of the Commissioner of Economic Security held that relator's dishonesty in responding to the employer's investigation was misconduct and ruled that relator was disqualified from receiving unemployment compensation benefits pursuant to Minn.Stat. § 268.09, subd. 1 (Supp.1983). We affirm.

### FACTS

Relator Kevin Cherveny was employed by respondent 10,000 Auto Parts as a "set-up" laborer and salesperson from February 28, 1983, until his discharge on July 11, 1983.

On or about June 1, 1983, in one of the employer's stores, relator attempted to return some auto parts which he claimed to have purchased from the employer in March 1983. He was informed by the store

manager that he needed a receipt to return the items for cash refund. Approximately three weeks later, relator exchanged the items at a different store.

Because of concern over employee theft, respondent employer has a detailed procedure for the purchase of auto parts by employees, with records of purchases kept in each employee's personnel file. Relator's file disclosed no receipts for the items exchanged. The security director of the employer was notified and, after relator was suspended on July 11, 1983, an investigation was commenced.

During the investigation, relator granted the security director permission to search his car and house. Upon examining relator's car, the security director discovered that it was equipped with a brand of stereo equipment stocked by the employer.

Relator informed the security director that the stereo equipment was in the car at the time he purchased it. After speaking with the prior owner of the car, the security director learned that the car did *not* contain the equipment at the time of its sale. When confronted with this information, relator then stated that he purchased the stereo equipment from Big Wheel, another dealer in the area. The security director asked to see the Big Wheel receipt and was informed by relator that it had been lost.

Thereafter, relator went to the Big Wheel store where he had allegedly purchased the stereo equipment. Relator informed an employee of the Big Wheel store that the stereo equipment had been stolen from his car and requested a receipt for his insurance company. Relator obtained a rewritten sales receipt dated March 12, 1983, and gave that receipt to the security director, failing to inform him that the receipt was not an original. The employer later found that the receipt provided by relator was a duplicate, rather than the original, receipt and that the Big Wheel dealer had no record of relator's alleged purchase of the stereo equipment from his store on the date in question.

After obtaining this information, the employer questioned relator regarding the receipt. Relator then informed the employer that he still had the original receipt and agreed to provide the security officer with the receipt at a prearranged meeting. Relator failed to meet the security officer as agreed.

On July 18, 1983, relator was discharged from his employment for dishonesty in connection with the investigation. Additionally, relator was terminated for failing to produce receipts on items he had allegedly purchased from the employer, for submitting false receipts on two items he stated were purchased at another dealer while being employed by the employer, and for exchanging parts without a receipt after being told that a receipt was necessary.

In ruling on relator's claim for unemployment compensation benefits, the representative of the Commissioner of Economic Security ruled that the evidence was insufficient to establish any misconduct with respect to the relator's attempt to return parts to the employer. However, as to the stereo speakers in relator's car, the Commissioner's representative found misconduct and stated:

We also agree that the employer's desire to inspect both the claimant's car and his home was an unwarranted intrusion into the claimant's personal affairs, which the claimant could have prevented merely by refusing to give his permission. However, the fact is that the claimant did give his permission for the search, and thereafter further undertook to answer questions put to him by the employer about the speakers found in the claimant's car. Again, we feel that the claimant could simply have refused to answer any questions; however, once having undertaken to answer the questions, it is our opinion that it was his duty to be honest with the employer. The evidence clearly establishes that the claimant lied to the employer. He at first stated that the speakers came with the car, and the employer discovered that this was not true. The employer's evidence in this

respect was hearsay, but was not refuted by the claimant. The evidence also clearly establishes that the claimant gave the employer a rewritten receipt which he obviously wanted them to believe was the original receipt. This was clearly a deception.

## ISSUE

Was relator's dishonesty in responding to employer's investigation misconduct sufficient to disqualify him from receiving unemployment compensation benefits pursuant to Minn.Stat. § 268.09, subd. 1 (Supp. 1983)?

## ANALYSIS

■ This court's scope of review is limited. In an Economic Security case:

The narrow standard of review requires that findings be viewed in the light most favorable to the decision, and if there is evidence reasonably tending to sustain them, they will not be disturbed.

*White v. Metropolitan Medical Center*, 332 N.W.2d 25, 26 (Minn.1983) (*citing Booher v. Transport Clearings of Twin Cities, Inc.*, 260 N.W.2d 181, 183 (Minn.1977)); *see also Group Health Plan, Inc. v. Lopez*, 341 N.W.2d 294, 296 (Minn.Ct.App.1983).

Minn.Stat. § 268.09, subd. 1(2), disqualifies a discharged employee from receiving unemployment compensation benefits when the individual "was discharged for misconduct, not amounting to gross misconduct connected with his work or for misconduct which interferes with and adversely affects his employment."

■ It is clear from the record that, given the number of conflicting explanations relator made about his stereo equipment, relator was dishonest in his responses to the investigation. We agree that the employer was overreaching in its investigation into what it feared was a theft of automotive equipment. We also agree that relator had no duty to permit a search of his car or home or to answer any questions about the property found there. Once he consented to the search and undertook to

answer questions posed by his employer, however, he had a duty to be truthful in his responses. Contrary to relator's argument, it was in the employer's interest to investigate what it believed to be a theft of goods, and relator's dishonesty was material to the employer's investigation. Relator's dishonesty was a deliberate violation of "standards of behavior which the employer has the right to expect of his employee." *Tilseth v. Midwest Lumber Co.*, 295 Minn. 372, 375, 204 N.W.2d 644, 646 (1973).

## DECISION

■ Relator's dishonesty in an investigation by the employer into an alleged theft of employer's goods was misconduct sufficient to disqualify relator from unemployment compensation benefits pursuant to Minn.Stat. § 268.09, subd. 1. The decision of the Commissioner of Economic Security denying benefits is accordingly affirmed.

Affirmed.