**Aireal ICENHOWER, Relator,**

v.

**TOTAL AUTOMOTIVE, INC., Respondent,**

**Department of Employment and Economic Development, Respondent.**

No. A13–1287.

Court of Appeals of Minnesota.

April 28, 2014.

Matthew J. Schaap, Annette M. Margarit, Dougherty, Molenda, Solfest, Hills & Bauer, P.A., Apple Valley, MN, for relator.

Jodi L. Johnson, Stoel Rives LLP, Minneapolis, MN, for respondent Total Automotive.

Lee B. Nelson, Department of Employment and Economic Development, St. Paul, MN, for respondent Department of Employment and Economic Development.

Considered and decided by HUDSON, Presiding Judge; PETERSON, Judge; and SCHELLHAS, Judge.

## OPINION

SCHELLHAS, Judge.

Relator challenges an unemployment-law judge's (ULJ) decisions not to grant

relator's request for the issuance of subpoenas and that relator is ineligible for unemployment benefits due to employment misconduct. We affirm.

## FACTS

Respondent Total Automotive Inc. employed relator Aireal Icenhower as a sales representative for about one year. On January 11, 2013, Icenhower told her supervisor, C.M., that 22 of her Ritalin pills, prescribed for her attention-deficit disorder (ADD), were missing from her purse. C.M. contacted the police to report the theft. Subsequently, both the Carver County Sheriff's Office and Total Automotive investigated the reported theft.

Icenhower initially told Officer Patrick Schwarzhoff of the Carver County Sheriff's Office that she did not know who stole her pills but later said that she believed that J.E. stole her pills. Both C.M. and Schwarzhoff separately questioned J.E. at his home, and both concluded that J.E. did not steal Icenhower's pills. When Schwarzhoff later asked Icenhower whether she had any other suspects, Icenhower said no. But, on the morning of January 15, Icenhower told Total Automotive's owner that she thought that she saw C.M. steal her pills from her desk. She also said that C.M. had been buying pills from her; that C.M. once gave another employee, S.B., the afternoon off work so that S.B. could get S.B.'s medication for C.M.; that Schwarzhoff told her on January 11 that "the only person that he suspected" of taking the pills was C.M.; and that, on

January 14, J.E. told Icenhower that C.M. had not questioned him at his home. Total Automotive's owner soon learned that Icenhower had lied about (1) C.M. telling S.B. to get S.B.'s pills for him, (2) Schwarzhoff's alleged statement that he suspected C.M. of stealing the pills, and (3) speaking with J.E. on January 14. Total Automotive's owner asked Icenhower whether "everything" was a lie and Icenhower nodded her head and said yes. Total Automotive discharged Icenhower for lying during the theft investigation.

Respondent Minnesota Department of Employment and Economic Development (DEED) determined that Icenhower was ineligible for unemployment benefits because Total Automotive discharged her for employment misconduct. Icenhower appealed and asked DEED to issue three subpoenas to require Total Automotive to produce the following information and witnesses: (1) documents that pertained to, among other things, Icenhower's ADD and its effect on her work performance; (2) C.M. to testify about his alleged involvement in the medication theft; and (3) T.S., a former Total Automotive employee, to provide testimony that allegedly would corroborate Icenhower's testimony. Total Automotive objected in part to issuance of the subpoenas, and DEED did not issue any of the subpoenas.

A ULJ held two hearings in connection with Icenhower's appeal. At the first hearing, the ULJ admitted 14 exhibits and addressed Icenhower's subpoena requests,[1] stating that she was "going to take testi-

---

1. Icenhower sought the following information through her subpoena requests:

    (1) the hearing attendance of T.S. and C.M.;
    (2) a transcript of C.M.'s January 11 phone call to the police; and

    (3) "[a]ll non-privileged materials in the possession, custody or control of Total Automotive . . . between or among . . . any . . . current or former employee(s) . . . that refer or relate to"
      (a) Icenhower's report to Total Automotive of the alleged January 11 theft and

mony first and ... determine if any subpoenas [were] necessary." Icenhower objected and requested a continuance to seek information under the subpoenas. The ULJ overruled Icenhower's objection but continued the hearing for unrelated reasons. At the continued hearing, the ULJ admitted an affidavit submitted by Icenhower from J.E., who stated, among other things, that C.M. supervised him and that J.E. believed that C.M. stole Icenhower's medication. The ULJ heard testimony from Total Automotive's owner, two Total Automotive sales managers, and Icenhower. Neither J.E., C.M., nor T.S. testified. Before the hearing concluded, the ULJ denied Icenhower's subpoena requests, reasoning that the evidence was sufficient.

The ULJ decided that Icenhower is ineligible to receive unemployment benefits because she engaged in employment misconduct—lying during Total Automotive's theft investigation. Icenhower requested reconsideration, arguing that the ULJ erred by finding that Icenhower admitted to fabricating a story. The ULJ affirmed, explaining the reason for denying Icenhower's subpoena requests and that whether C.M. stole Icenhower's medication was irrelevant because her admitted fabrication was employment misconduct.

This certiorari appeal follows.

## ISSUES

I.  Did the ULJ abuse her discretion by declining to issue the requested subpoenas?

that C.M. was at least encouraging her to sell her ADD medication to him,
(b) C.M.'s purchase of medication from Total Automotive employees or their friends or spouses,
(c) Total Automotive's decision to terminate Icenhower's employment and the circumstances that surrounded that decision,

II. Did the ULJ err by concluding that Icenhower committed employment misconduct?

## ANALYSIS

### I.

Icenhower argues that the ULJ erred by denying her subpoena requests and asks this court to reverse the ULJ's ineligibility decision, remand with instructions for the ULJ to issue the requested subpoenas, and conduct a new hearing.

Minnesota Statutes section 268.105, subdivision 4, provides, in pertinent part,

A[ ] [ULJ] has authority to administer oaths and affirmations, take depositions, and issue subpoenas to compel the attendance of witnesses and the production of documents and other personal property considered necessary as evidence in connection with the subject matter of an evidentiary hearing.

The [ULJ] must give full consideration to a request for a subpoena and must not unreasonably deny a request for a subpoena. If a subpoena request is initially denied, the [ULJ] must, on the [ULJ]'s own motion, reconsider that request during the evidentiary hearing and rule on whether the request was properly denied. If the request was not properly denied, the evidentiary hearing must be continued for issuance of the subpoena.

(d) Total Automotive's owner's handwritten notes from the investigation of Icenhower's medication-theft allegation (Total Automotive previously produced only *typed* notes of the owner),
(e) the strengths and weaknesses of Icenhower's appeal, and
(f) Icenhower's ADD or its effect on her work performance.

*See also* Minn.Stat. § 268.188(a) (2012) (granting similar authority to DEED's commissioner); *Ntamere v. Decisionone Corp.*, 673 N.W.2d 179, 181 (Minn.App. 2003) (stating that DEED adopted its own rules regarding subpoenas); Minn. R. 3310.2914, subp. 1 ("Subpoenas are available to a party to compel the attendance of witnesses, the production of documents or other exhibits upon a showing of necessity by the party applying for subpoenas.").

Neither the legislature, DEED, nor any Minnesota appellate court has identified what standard of review applies to a ULJ's decision whether to issue a subpoena. *But cf. LaSalle Cartage Co. v. Hampton*, 362 N.W.2d 337, 339, 342 (Minn.App.1985) (rejecting LaSalle's argument that economic-security commissioner "abused her discretion in refusing to issue subpoenas"). But, in a case involving an information request by the director of the Minnesota Office of Lawyers Professional Responsibility (OLPR) under Minn. R. Prof. Conduct 25(a), the Minnesota Supreme Court addressed the appropriate standard of review by a district court of an OLPR director's information request. *In re Charges of Unprofessional Conduct Involving File No. 17139*, 720 N.W.2d 807, 811 (Minn.2006). After a lawyer-respondent refused to provide information requested by the OLPR, the OLPR director moved the district court for an order "finding that his request for disclosure of respondent's sources was reasonable." *Id.* The supreme court granted the OLPR director's petition for discretionary review and noted that the supreme court "[had] not before determined the appropriate standard for reviewing a district court's ruling on a Rule 25(a) request." *Id.* The parties suggested that the supreme court "apply an abuse of discretion standard, analogizing to review of a district court's ruling on a discovery

motion," and the supreme court agreed. *Id.* The supreme court reasoned that, "[i]n the context of civil litigation, a district court has broad discretion to issue discovery orders"; that "Rule 25(a) requests are analogous to civil discovery requests in that both provide a method for a party to obtain information relevant to its claim from another party"; and that the district court's ruling "will be reversed on appeal only upon an abuse of such discretion." *Id.* (quotations omitted).

■ In this case, we are mindful that a ULJ "must ensure that all relevant facts are clearly and fully developed," Minn. Stat. § 268.105, subd. 1(b) (2012); *accord* Minn. R. 3310.2921 (2013), and that "[a] request for a subpoena may be denied if the testimony or documents sought would be irrelevant, immaterial, or unduly cumulative or repetitious," Minn. R. 3310.2914, subp. 1. *See also* Minn. R. 3310.2921 ("The judge may limit repetitious testimony and arguments."). We conclude that subpoenas requested under section 268.105, subdivision 4, and rule 3310.2914, subpart 1, are analogous to civil discovery requests because both provide a method for a party to obtain information relevant to its claim from another party. We hold that whether to issue a subpoena under section 268.105, subdivision 4, and rule 3310.2914, subpart 1, is within a ULJ's sound discretion and we will not reverse the decision absent an abuse of discretion. Our holding is consistent with our standard of review of discovery rulings by administrative-law judges for an abuse of discretion. *See In re Parkway Manor Healthcare Ctr.*, 448 N.W.2d 116, 118 (Minn.App.1989) (stating that court of appeals reviews administrative-law judges' discovery rulings for abuse of discretion and will not reverse such rulings absent clear abuse of discre-

tion), *review denied* (Minn. Jan. 18, 1990); *see also Midway Care Ctr., Inc. v. Minn. Comm'r of Human Servs.*, 615 N.W.2d 863, 865 n. 1 (Minn.App.2000) (concluding that administrative-law judge did not abuse discretion by denying pre-hearing motion to compel discovery); *cf. N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 237 n. 16, 98 S.Ct. 2311, 2324 n. 16, 57 L.Ed.2d 159 (1978) ("Most Circuits have held that prehearing discovery questions are committed to the [National Labor Relations] Board's discretion.").

■ Having determined the proper standard of review, we apply it to Icenhower's arguments to determine whether the ULJ abused her discretion by denying Icenhower's subpoena requests. Icenhower argues that, if subpoenaed, C.M. could have testified about the effect of Icenhower's ADD on her work and how it could have led her to fabricate her phone call with J.E. She also argues that "[i]t is not unrealistic to suggest that an individual with ADD—when faced with the stress of revealing an illegal practice involving her manager—would become *scattered and confused* when the manager denied the truth of her allegations." (Emphasis added.) But Total Automotive did not terminate Icenhower's employment because Icenhower was "scattered and confused"; it terminated her employment because she lied during a workplace-theft investigation.

Icenhower relies on *Thompson v. Cnty. of Hennepin*, 660 N.W.2d 157, 160–61 (Minn.App.2003), and *Ntamere*, 673 N.W.2d at 179–82, in which we reversed denials of unemployment benefits involving subpoena requests. But, Icenhower's reliance on these cases is misplaced. In *Thompson*, after a ULJ continued a hearing so that a pro se relator could subpoena two witnesses, neither witness appeared

and the relator told the ULJ that she had requested DEED to subpoena both witnesses. 660 N.W.2d at 159. The ULJ allowed the relator to state what she believed would have been the testimony of one of the witnesses "but proceeded with the hearing without further inquiry into the witnesses' failure to attend." *Id.* After the ULJ found that the relator falsified records and concluded that she committed disqualifying employment misconduct, we remanded for development of the record because we concluded that the relator "was not given a full opportunity to present her defense to the allegation of employment misconduct." *Id.* at 159–61. In *Ntamere*, the relator was pro se, DEED issued two subpoenas requested by relator, and the employer did not comply with the subpoenas. 673 N.W.2d at 179–80. We reversed because the ULJ decided not to enforce the subpoenas based on a reason that was not legally sufficient—that there "[wasn't] any reason to stretch things out." *Id.* at 182.

Here, Icenhower was represented by counsel before and at the evidentiary hearing and the ULJ's basis for not issuing the subpoenas is legally sufficient. The focus of the evidentiary hearing was whether Icenhower lied during Total Automotive's theft investigation—an investigation precipitated by Icenhower's theft report—and whether Icenhower therefore engaged in employment misconduct. Icenhower admitted to the ULJ and admits on appeal that she lied to Total Automotive during its January 15 theft investigation when she stated that she spoke with J.E. on January 14 and that he told her that C.M. had not gone to his home on January 11. Icenhower focused her subpoena requests on C.M.'s alleged wrongdoing and the impact of Icenhower's ADD on her employment performance. The ULJ denied Icenhow-

er's subpoena requests, reasoning that the ULJ had sufficient evidence from the testimony, affidavit, and exhibits already submitted to make her decision.

The record reveals no instance in which Icenhower claimed that any information sought through the requested subpoenas would show that she could not tell the truth unless she was taking her ADD medication. Because the focus of Icenhower's subpoena requests was not relevant to the issues before the ULJ, we conclude that the ULJ did not abuse her discretion by denying the subpoena requests.

## II.

■ The ULJ found that Icenhower lied about having a January 14 conversation with J.E. "to support her allegations against [C.M.]" and concluded that Icenhower committed employment misconduct by lying during Total Automotive's investigation into her allegation that someone stole her medication. Icenhower testified before the ULJ, and admits on appeal, that she lied about having a January 14 conversation with J.E. But Icenhower claims that she lied only once, that her lie was immaterial, that ADD caused her to lie, and that the ULJ erred by concluding that she committed employment misconduct. We disagree.

An employee is ineligible for unemployment benefits if the employee is discharged for employment misconduct. Minn.Stat. § 268.095, subd. 4(1) (2012). Appellate courts "will narrowly construe the disqualification provisions of the statute in light of their remedial nature, as well as the policy that unemployment compensation is paid only to those persons unemployed through no fault of their own." *Stagg v. Vintage Place Inc.*, 796 N.W.2d 312, 315 (Minn.2011) (quotations omitted);

*see also* Minn.Stat. §§ 268.03, subd. 1 (no fault of their own), .031, subd. 2 (remedial nature) (2012). We may reverse or modify a ULJ's decision if the relator's substantial rights may have been prejudiced because the findings or decision are unsupported by substantial evidence or made upon unlawful procedure. Minn.Stat. § 268.105, subd. 7(d)(3), (5) (2012).

■ "Whether an employee engaged in conduct that disqualifies the employee from unemployment benefits is a mixed question of fact and law." *Stagg*, 796 N.W.2d at 315 (quotation omitted). Appellate courts review de novo as a question of law "whether a particular act constitutes disqualifying misconduct," *id.*, but "[w]hether the employee committed a particular act is an issue of fact," *Cunningham v. Wal–Mart Assocs.*, 809 N.W.2d 231, 235 (Minn.App.2011). Appellate courts "review the ULJ's factual findings in the light most favorable to the decision," *Stagg*, 796 N.W.2d at 315 (quotation omitted), and we "give deference to the ULJ's credibility determinations," *Van de Werken v. Bell & Howell, LLC*, 834 N.W.2d 220, 221 (Minn.App.2013).

"Employment misconduct means any intentional, negligent, or indifferent conduct, on the job or off the job that displays clearly: (1) a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee; or (2) a substantial lack of concern for the employment." Minn.Stat. § 268.095, subd. 6(a) (2012). "As a general rule, refusing to abide by an employer's reasonable policies and requests amounts to disqualifying misconduct." *Schmidgall v. FilmTec Corp.*, 644 N.W.2d 801, 804 (Minn.2002). "If the conduct for which the applicant was discharged involved only a single incident, that is an important fact

that must be considered in deciding whether the conduct rises to the level of employment misconduct...." Minn.Stat. § 268.095, subd. 6(d) (2012).

### Dishonesty

■ "Dishonesty that is connected with employment may constitute misconduct." *Baron v. Lens Crafters, Inc.*, 514 N.W.2d 305, 307–08 (Minn.App.1994). In *Cherveny v. 10,000 Auto Parts*, we concluded that "[r]elator's dishonesty in an investigation by the employer into an alleged theft of employer's goods was misconduct sufficient to disqualify relator from unemployment compensation benefits." 353 N.W.2d 685, 688 (Minn.App.1984); *see also Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 342 (Minn.App.2006) (holding that employee's single incident of theft from employer has significant adverse impact on employer and constitutes employment misconduct).

Icenhower argues that she did not engage in employment misconduct because the lie was immaterial. To support her argument, Icenhower relies on caselaw that pertains to misrepresentations on employment applications. *See Indep. Sch. Dist. No. 709 v. Hansen*, 412 N.W.2d 320, 322–23 (Minn.App.1987) (following *Heitman*); *Heitman v. Cronstroms Mfg., Inc.*, 401 N.W.2d 425, 426 (Minn.App.1987) (holding that, "to disqualify an employee from receiving unemployment compensation based upon a misrepresentation in the employee's employment application, it must be demonstrated that the misrepresentation was 'material' to the position sought"). In *Santillana v. Cent. Minn. Council on Aging*, we concluded that "a material misrepresentation during the hiring process continues to fit within the statutory definition of employment misconduct." 791 N.W.2d 303, 307 (Minn.App. 2010). But Icenhower's reliance on *Han-*

*sen* and *Heitman* is misplaced because misrepresentations made during the hiring process are not akin to lies made during workplace-theft investigations. Moreover, Icenhower's lie about her January 14 conversation with J.E. was material—by lying, Icenhower violated Total Automotive's policy against making false claims and false allegations, a policy about which Icenhower knew, and misdirected Total Automotive's workplace-theft investigation. And, based on substantial record evidence, Icenhower also lied about Schwarzhoff telling her that he suspected C.M. of stealing her pills and about C.M. telling S.B. to get S.B.'s medication for C.M., and she admitted to Total Automotive's owner that she lied about "everything." Icenhower's lies threatened C.M.'s employment with Total Automotive and exposed him to criminal prosecution.

We conclude that substantial evidence supports the ULJ's finding that Icenhower lied about having a January 14 conversation with J.E. "to support her allegations against [C.M.]."

### Mental Illness

■ Icenhower argues that her mental illness—ADD—caused her to lie and that her lie was not employment misconduct because she lied because of her "impaired state of mind" caused by her not taking her ADD medication for more than three days. Minnesota Statutes section 268.095, subdivision 6(b)(1) (2012), excludes from the definition of employment misconduct "conduct that was *a consequence of* the applicant's mental illness or impairment." (Emphasis added.) In *Cunningham*, we held that, under section 268.095, subdivision 6(b)(1), "[w]hen an employer discharges an employee for conduct that is indisputably *caused by* the employee's inability to concentrate and multitask as a result of

strokes that he suffered, the conduct is a 'consequence of' a mental illness or impairment." 809 N.W.2d at 232 (emphasis added). But, here, when the ULJ asked Icenhower to explain why she lied about her January 14 conversation with J.E., Icenhower replied that she really did not have a "good reason" and that "the only thing that [she could] say is that [she] wasn't on [her] medication and . . . was very scattered and [she] thought that [lying] would help [her]."

■ Although the ULJ found that Icenhower's medication "went missing" on January 11 and nothing in the record reflects that Icenhower found her pills, her argument that her ADD caused her to lie is unpersuasive because, as found by the ULJ, no record evidence shows that ADD causes a person to lie. Icenhower cites websites to support her argument that ADD "is known to produce verbal impulsiveness." We decline to review those websites because no one provided copies of their contents to the ULJ. *Cf. Eischen v. Crystal Valley Co-op.*, 835 N.W.2d 629, 636 (Minn.App.2013) (stating that websites cited but not printed and filed in district court were "not in the record on appeal"), *review denied* (Minn. Oct. 15, 2013). "An appellate court may not base its decision on matters outside the record on appeal, and may not consider matters not produced and received in evidence below." *Thiele v. Stich*, 425 N.W.2d 580, 582–83 (Minn.1988); *see McNeilly v. Dep't of Emp't & Econ. Dev.*, 778 N.W.2d 707, 709 n. 1 (Minn.App.2010) (declining to consider affidavits not submitted to ULJ). Minnesota Rule of Civil Appellate Procedure 110.01 provides that "[t]he papers filed in *the trial court*, the exhibits, and the transcript of the proceedings, if any, shall constitute the record on appeal in all cases."

(Emphasis added.) Although rule 110.01, on its face, applies only to papers filed in "the trial court," not with a ULJ, Minnesota Rule of Civil Appellate Procedure 115.04, subdivision 1, explains that rule 110 "govern[s] upon the issuance of the writ" of certiorari and that "[e]ach reference in Rules 110 and 111 to the trial court . . . shall be read, where appropriate, as a reference to the body whose decision is to be reviewed."

Substantial evidence in the form of Icenhower's testimony supports the ULJ's finding that Icenhower lied "to support her allegations against [C.M.]." We conclude that the ULJ did not err by concluding that Icenhower engaged in employment misconduct by lying to her employer during its workplace-theft investigation. *See Cherveny*, 353 N.W.2d at 688 (concluding, in connection with employer's investigation, that Cherveny's "dishonesty was a deliberate violation of standards of behavior which the employer ha[d] the right to expect of his employee" (quotation omitted)); *see also Stagg*, 796 N.W.2d at 315 (noting "the policy that unemployment compensation is paid only to those persons unemployed through no fault of their own" (quotations omitted)).

### DECISION

The ULJ's decision to not issue the subpoenas requested by Icenhower did not constitute an abuse of discretion. Icenhower committed employment misconduct by lying to her employer during its workplace-theft investigation.

**Affirmed.**