*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0052**

Tonya Johnson,
Respondent,

vs.

Asbestos Workers Union No. 34,
Relator,

Department of Employment and Economic Development,
Respondent.

**Filed September 2, 2014
Affirmed
Chutich, Judge**

Department of Employment and Economic Development
File No. 31564637-3

Brian R. Christiansen, KrisAnn R. Norby-Jahner, Hellmuth & Johnson, Edina, Minnesota (for respondent)

Brendan D. Cummins, Cummins & Cummins, LLP, Minneapolis, Minnesota (for relator)

Lee B. Nelson, Munazza Humayun, St. Paul, Minnesota (for respondent department)

Considered and decided by Halbrooks, Presiding Judge; Chutich, Judge; and Klaphake, Judge.[*]

_____

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**CHUTICH**, Judge

Relator Asbestos Workers Union No. 34 (the Union) challenges the unemployment-law judge's decision that respondent Tonya Johnson is eligible for unemployment benefits because she was not discharged for employment misconduct. The Union contends that the evidence does not support the factual findings and that the unemployment-law judge should have issued a subpoena and ordered an additional hearing. Because substantial evidence supports the findings and the unemployment-law judge acted within her discretion, we affirm.

## FACTS

In January 2009, respondent Tonya Johnson began working for the Union as an administrative assistant. In July 2012, Johnson called the Union and told Keith Christopherson, the business manager, that her air-conditioning unit was broken and that she needed to take the day off to get it repaired. Christopherson told Johnson that he would contact a contractor that he knew to look at the unit as a favor.

Johnson's husband met the union contractor at the house. The contractor did not tell Johnson's husband that he would be charging for the visit. The contractor told him that the Johnsons were "friend[s] of the owners," which Johnson and her husband understood to mean that they would not be charged. Johnson and her husband ultimately paid a different company to fix the unit.

At the Union, Christopherson opened a bill for the air-conditioning service that was mailed to the Union. He paid the $422 bill using his Union credit card, and he did

not tell Johnson about the bill. Johnson and her husband did not see any bills or invoices from the contractor, and they did not know that Christopherson used Union funds to pay for the service.

In August 2012, Johnson told Christopherson that she had been charged with shoplifting and that she was upset with her attorney. Christopherson recommended a different attorney, Thomas Sieben, and spoke with Sieben about representing Johnson. Christopherson offered to pay for Sieben's attorney fees. Johnson accepted, understanding his offer to mean that he would pay with his personal money. She believed that Christopherson was paying with his own money because he was her friend, he wanted to help, and he could afford it.

Christopherson told Sieben that he was paying for the representation and directed Sieben to send any billing and payment information to him. Christopherson falsified documents to receive funds from the Union, which he used to pay the attorney fees. He hand-delivered two checks totaling $6,000 to Sieben's office, and he left the checks with the receptionist. Christopherson did not tell Johnson that he used Union money to pay her attorney fees.

In June 2013, the Union discovered that Christopherson had misappropriated approximately $40,000 of the Union's funds. Johnson also learned about Christopherson's wrongdoings at that time.

Johnson continued to work for the Union until August 26, 2013. The Union then terminated Johnson's employment because it thought that Johnson knew of and benefitted from Christopherson's misappropriation.

3

Johnson unsuccessfully applied for unemployment benefits from respondent Department of Employment and Economic Development (department). Johnson appealed the department's determination that she was ineligible for benefits. In September 2013, the unemployment-law judge conducted an evidentiary hearing by telephone. Johnson testified and was represented by counsel; Keith Christopherson and Johnson's husband testified on her behalf. The Union was represented by counsel, and the new business manager and financial secretary testified on the Union's behalf.

Sam Schultz, who replaced Christopherson as the Union's business manager, testified that the only reason that Johnson was discharged was because she knew that Union funds were improperly used to pay for personal repairs to her air-conditioning unit and for her attorney. Schultz assumed that Johnson knew about the payments because (1) the contractor's paid invoice, showing that the Union's credit card was used, listed Johnson's home address after "bill to" and "ship to" and (2) Johnson and Christopherson "were always together" and "were pretty good friends."

On October 7, 2013, the unemployment-law judge determined that Johnson's employment was not terminated because of employment misconduct. She credited Johnson and Christopherson's testimony that Johnson did not know about Christopherson's misappropriation of Union funds. The unemployment-law judge held that, because Johnson was unaware that Christopherson used the Union funds, Johnson did not commit employment misconduct. The Union requested reconsideration, and the unemployment-law judge affirmed her decision. This petition for a writ of certiorari followed.

4

**D E C I S I O N**

We review de novo an unemployment-law judge's determination that an applicant is ineligible to receive unemployment benefits. *Stassen v. Lone Mountain Truck Leasing, L.L.C.*, 814 N.W.2d 25, 30 (Minn. App. 2012). We may affirm the unemployment-law judge's decision, remand it for further proceedings, or reverse or modify the decision if the substantial rights of the relator have been prejudiced because the findings, inferences, conclusion, or decision are affected by error of law or are "unsupported by substantial evidence in view of the entire record as submitted." Minn. Stat. § 268.105, subd. 7(d) (2012).

An employee discharged because of employment misconduct is ineligible for unemployment benefits. Minn. Stat. § 268.095, subd. 4(1) (2012). "Employment misconduct means any intentional, negligent, or indifferent conduct, on the job or off the job that displays clearly: (1) a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee; or (2) a substantial lack of concern for the employment." *Id.*, subd. 6(a) (2012).

The purpose of chapter 268 is to assist those "who are unemployed through no fault of their own." Minn. Stat. § 268.03, subd. 1 (2012). The "chapter is remedial in nature and must be applied in favor of awarding unemployment benefits," and any provision precluding receipt of benefits must be narrowly construed. Minn. Stat. § 268.031, subd. 2 (2012).

5

## I.    Substantial Evidence

The Union asserts that the unemployment-law judge's decision that Johnson did not commit employment misconduct is unsupported by substantial evidence in the record. Whether an employee committed a certain act is a question of fact. *Lawrence v. Ratzlaff Motor Express Inc.*, 785 N.W.2d 819, 822 (Minn. App. 2010), *review denied* (Minn. Sept. 29, 2010). We review factual findings in the light most favorable to the decision, and we defer to the unemployment-law judge's credibility determinations. *Id.* Factual findings "will not be disturbed when the evidence substantially sustains them." *Id.* We review de novo "[w]hether a particular act constitutes disqualifying misconduct." *Schmidgall v. FilmTec Corp.*, 644 N.W.2d 801, 804 (Minn. 2002).

The record substantially supports the unemployment-law judge's determination that Johnson did not know that Christopherson paid her criminal attorney or paid the contractor with Union money. Johnson testified that she believed Christopherson was paying for the attorney with his own money and that she was not aware of any payment to the contractor for the air-conditioning service. Christopherson also testified that he did not tell Johnson that he used Union funds to pay.

The Union has not presented evidence to the contrary. Instead, the Union argues that alleged contradictory testimony during the hearing shows that Johnson was not credible and that no reasonable fact-finder would believe Christopherson, given his admitted actions in misappropriating Union funds. The unemployment-law judge rejected these arguments on reconsideration, and we agree. When viewing the testimony as a whole, it is not contradictory. Rather, Johnson consistently testified that she was

6

unaware that Christopherson paid for the services with Union funds, that she did not read Sieben's retainer agreement, and that she did not see an invoice from the contractor. Sieben's conduct and whether the payment was a gift or a loan are irrelevant to Johnson's knowledge of the misappropriations.

The unemployment-law judge held that "Johnson's testimony was credible because it was based upon firsthand knowledge, was consistent, and was supported by Christopherson's testimony." And, despite Christopherson's admissions of misappropriating the Union's funds, the unemployment-law judge decided that "Christopherson's testimony that Johnson did not know about his misappropriation was credible" because only a "small portion" of the funds he misappropriated benefitted Johnson and it was "in Christopherson's best interest not to let Johnson or anyone else know of his misappropriation." In the reconsideration order, the judge held that Christopherson's past false statements "[do] not show that his testimony was false in the hearing" and that the Union failed to show otherwise.

Because the unemployment-law judge's findings are supported by substantial evidence, and because the judge provided reasons for her credibility determinations, we defer to her decision to credit Johnson and Christopherson's testimony. *See Ywswf v. Teleplan Wireless Servs., Inc.*, 726 N.W.2d 525, 533 (Minn. App. 2007). We therefore uphold the determination that Johnson is eligible for benefits because she was not discharged for employment misconduct.

## II. Subpoena Request

The Union contends that it was reversible error to deny its subpoena request because the requested documents "could and will likely show" that Sieben agreed to be paid with funds from the Union. The decision whether to issue a subpoena is within an unemployment-law judge's "sound discretion," and "we will not reverse the decision absent an abuse of discretion." *Icenhower v. Total Auto., Inc.*, 845 N.W.2d 849, 853 (Minn. App. 2014), *review denied* (Minn. July 15, 2014).

"Subpoenas are available to a party to compel . . . the production of documents or other exhibits upon a showing of necessity by the party applying for subpoenas." Minn. R. 3310.2914, subp. 1 (2013). "A request for a subpoena may be denied if the testimony or documents sought would be irrelevant, immaterial, or unduly cumulative or repetitious." *Id.*

The unemployment-law judge acted within her discretion in denying the Union's subpoena request. Shortly before the evidentiary hearing, the Union requested that a subpoena be served on Sieben for "[a]ny and all fee agreements and representational agreements referring or relating to the representation of Tonya Johnson" and "[a]ny and all bills and invoices" for such representation. The unemployment-law judge waited to rule on the request until the end of the hearing. After hearing all of the testimony, the judge denied the request.

Both Johnson and Christopherson testified that Johnson did not read the retainer agreement, and the unemployment-law judge credited their testimony. No evidence shows that Johnson saw any invoices or bills from Sieben. The Union has not shown that

8

production of the agreement or invoices would prove that Johnson knew that Christopherson paid for her attorney fees with Union funds. Upon this record, we cannot say that the unemployment-law judge abused her discretion in denying the request for a subpoena.

### III. New Evidence

Lastly, the Union claims that the unemployment-law judge should have ordered an additional hearing because it presented evidence of the air-conditioning contractor's standard billing practices. We defer to an unemployment-law judge's decision whether to grant a hearing and will reverse that decision only if the unemployment-law judge abused its discretion. *Vasseei v. Schmitty & Sons Sch. Buses Inc.*, 793 N.W.2d 747, 750 (Minn. App. 2010).

When deciding a request for reconsideration, the unemployment-law judge "must not consider any evidence that was not submitted at the hearing, except for purposes of determining whether to order an additional hearing." 2014 Minn. Laws ch. 251, art. 2, § 16 (amending Minn. Stat. § 268.105, subd. 2 (2012)). The judge "must order an additional hearing if a party shows that evidence which was not submitted at the hearing . . . would likely change the outcome of the decision and there was good cause for not having previously submitted that evidence." *Id.*

Here, the new evidence describes the contractor's standard practice for shipping paid invoices, but it does not show that the invoice listing Johnson's home address was actually mailed to her home address. And even if the invoice was mailed to Johnson's home, the unemployment-law judge credited Johnson's testimony that she did not see any

invoices.  We conclude that the unemployment-law judge acted within her discretion when the judge found that the proposed evidence would not have changed the outcome of the decision.

**Affirmed.**