*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1684**

Lorraine Rosenthal,
Relator,

vs.

Cardinal of Minnesota, Ltd.,
Respondent,

Department of Employment & Economic Development,
Respondent.

**Filed April 27, 2015
Affirmed
Reilly, Judge**

Department of Employment and Economic Development
File No. 32607873-3

Lorraine L. Rosenthal, Roseville, Minnesota (pro se relator)

Cardinal of Minnesota, Ltd., Rochester, Minnesota (respondent)

Lee B. Nelson, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent Department of Employment & Economic Development)

Considered and decided by Kirk, Presiding Judge; Ross, Judge; and Reilly, Judge.

## U N P U B L I S H E D   O P I N I O N

**REILLY**, Judge

Relator Lorraine Rosenthal challenges the denial of her claim for unemployment benefits on the ground that the unemployment-law judge (ULJ) erred in determining that

she quit her employment and was therefore ineligible to receive unemployment benefits. Because the ULJ's factual findings are substantially sustained by the evidence in the record, we affirm.

**FACTS**

Rosenthal was employed with respondent Cardinal of Minnesota, Limited (Cardinal) from October 30, 2001, to May 23, 2014. At the time of her retirement, Rosenthal was employed full time as a licensed practical nurse. For several years prior to leaving her employment, Rosenthal had "casual conversations" with her coworkers that she intended to sell her house and retire to the Twin Cities to be closer to her family. In late 2013, Rosenthal sold her house to Cardinal for use as a new residential home for clients living in the area. Rosenthal told her coworkers that she would be retiring from the company at the end of February and moving into a condominium in the Twin Cities.

Rosenthal took two weeks off in January 2014 to move her belongings. Rosenthal asked for, and received, an additional week off from work in January to complete her move. Rosenthal indicated to Cardinal's nursing director that she intended to retire at the end of February. Cardinal hired a new nurse and scheduled her to train with Rosenthal during Rosenthal's last weeks of employment. Rosenthal came back to work in late January and helped create a training schedule for the new nurse.

At the end of February, Rosenthal approached the nursing director and asked if she could extend her retirement date from late February to the end of May. The nursing director granted the request and agreed upon a retirement date of May 23, which fell at

the end of a pay period. On Rosenthal's last day of employment, Cardinal feted her with a retirement party, gifts, and a testimonial video.

Rosenthal thereafter applied for unemployment benefits. On June 25, 2014, the Minnesota Department of Employment and Economic Development (DEED) determined that Rosenthal was ineligible for unemployment benefits because voluntary retirement constitutes a quit from employment. DEED determined that Rosenthal chose to retire during the week beginning May 18, 2014, when continuing suitable work was available with her employer. Rosenthal appealed DEED's decision on the same date.

The ULJ conducted a hearing on July 8, 2014, by way of a telephone conference call. Rosenthal, Cardinal's human resource manager, and Cardinal's nursing director provided testimony at the hearing. Rosenthal testified that she never intended to retire and was "totally shocked" to learn that the company was planning a retirement party for her.

The ULJ issued a decision on July 11, 2014, finding that Rosenthal quit her employment and was ineligible for payment of unemployment benefits. The ULJ determined that the "preponderance of the evidence shows that Rosenthal quit her employment." The ULJ stated that the evidence showed that Rosenthal communicated to Cardinal in December 2013 that she wanted to retire, and selected the initial retirement date in February, as well as the extended retirement date of May 23. The ULJ concluded that "Cardinal had no interest in removing Rosenthal from her position and did not indicate that Rosenthal must retire at any point during her employment." The ULJ

3

concluded that Rosenthal quit her employment and was not eligible to receive unemployment benefits as a result of her separation from employment.

Rosenthal requested reconsideration of the ULJ's decision, which was affirmed. Rosenthal thereafter appealed the decision to this court by writ of certiorari.

## D E C I S I O N

When reviewing an unemployment insurance benefits decision, we may affirm, remand the case for further proceedings, or reverse and modify the decision if the substantial rights of the relator have been prejudiced because the conclusion, decision, findings, or inferences are affected by errors of law, unsupported by substantial evidence in view of the entire record, or are arbitrary or capricious. Minn. Stat. § 268.105, subd. 7(d) (2014). We view the ULJ's factual findings in the light most favorable to the decision and will not disturb them if they are substantially supported by the evidence. *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006). Questions of law are subject to de novo review. *Schmidgall v. FilmTec Corp.*, 644 N.W.2d 801, 804 (Minn. 2002).

The issue presented is whether the ULJ erred in determining that Rosenthal quit her employment. "A quit from employment occurs when the decision to end the employment was, at the time the employment ended, the employee's." Minn. Stat. § 268.095, subd. 2(a) (2014). Whether an employee has been discharged or voluntarily quits is a question of fact. *Nichols v. Reliant Eng'g & Mfg., Inc.*, 720 N.W.2d 590, 594 (Minn. App. 2006). The ULJ determined that the "preponderance of the evidence shows

4

that Rosenthal quit her employment because she wanted to retire." Substantial evidence in the record supports this determination.

Rosenthal spoke with her coworkers about retiring for several years prior to leaving Cardinal. In December 2013, Rosenthal sold her house to her employer and told her coworkers that she would be retiring from the company and moving to a condominium in the Twin Cities to be closer to her family. Rosenthal told her manager that she wanted to move in January and retire at the end of February. Rosenthal took three weeks of vacation in January to complete her move. When Rosenthal returned, she helped create a training schedule for the new nurse hired to replace her. Rosenthal asked for, and received, an extension of her retirement date from February to May 2013. The company threw Rosenthal a retirement party on her last day of employment. Based on this testimony, the ULJ determined that Rosenthal's proffered reason for her unemployment—that she never intended to retire—was not "a good reason caused by the employer." We agree, and conclude that the record substantially supports the ULJ's determination that Rosenthal quit her employment with Cardinal because she wanted to retire.

Rosenthal challenges the credibility of Cardinal's witnesses. "When the credibility of a witness testifying in a hearing has a significant effect on the outcome of a decision, the unemployment law judge must set out the reason for crediting or discrediting that testimony." Minn. Stat. § 268.105, subd. 1a(a) (2014). The ULJ weighed Rosenthal's testimony against that of the other witnesses and determined that "[t]o the extent the parties disagreed, [Cardinal's employees'] testimony was more

5

credible than Rosenthal's testimony because the employer's testimony was more reasonable under the circumstances and followed a more logical chain of events." By comparison, the ULJ found that "Rosenthal's testimony, when viewed as a whole, did not follow a logical chain of events and did not seem reasonable under the circumstances." Credibility determinations are the "exclusive province" of the ULJ, and we defer to the ULJ's determinations in this matter. *Skarhus*, 721 N.W.2d at 345.

Rosenthal also argues that she did not quit her employment with Cardinal and that her job ended "because it was [her] employer's decision." An applicant who quits employment is ineligible to receive unemployment benefits unless a statutory exception applies. Minn. Stat. § 268.095, subd. 1 (2014). One such exception is when an applicant quits "because of a good reason caused by the employer." *Id*., subd. 1(1). A "good reason caused by the employer" is a reason that: (1) is directly related to the employment and for which the employer is responsible; (2) is adverse to the employee; and (3) would compel an average, reasonable worker to quit and become unemployed. *Id*., subd. 3(a) (2014). Thus, irreconcilable differences with an employer or "mere dissatisfaction with working conditions" do not constitute good cause to quit. *Ryks v. Nieuwsma Livestock Equip*., 410 N.W.2d 380, 382 (Minn. App. 1987). Whether an employee had good cause to quit is a question of law we review de novo. *Rowan v. Dream It, Inc*., 812 N.W.2d 879, 883 (Minn. App. 2012).

Rosenthal argues that she was treated unfairly on account of her age, but she did not submit any factual evidence supporting her age-discrimination claim. During the ULJ hearing, Cardinal's human resources manager asked Rosenthal about her allegation

6

that she was forced into retirement on account of her age. Rosenthal responded by saying, "I didn't say it was because of my age." The ULJ considered Rosenthal's age-discrimination argument and found that her contentions were not credible because they "[did] not seem likely under the circumstances" as a whole. The ULJ noted that Cardinal first hired Rosenthal in 2001 "when she was approaching the age of retirement" and, "[i]f Cardinal did not want to have more mature workers in Rosenthal's role, it seems unlikely management would have hired someone that was nearly 60."

There is no evidence in the record that Cardinal discriminated against Rosenthal based on her age. And, assuming Cardinal's management subjected Rosenthal to adverse working conditions because of her age, Minnesota law compelled her to "complain to the employer and give the employer a reasonable opportunity to correct the adverse working conditions before that may be considered a good reason caused by the employer for quitting." Minn. Stat. § 268.095, subd. 3(c) (2014). There are no facts in the record suggesting that Rosenthal spoke to Cardinal's management regarding her concerns that she was being forced into retirement because of her age.

Rosenthal also argues that she was "treated unfairly" at the hearing because the ULJ denied her request to subpoena her coworkers. Whether to issue a subpoena is within a ULJ's sound discretion and will not be reversed absent an abuse of discretion. *Icenhower v. Total Auto., Inc*., 845 N.W.2d 849, 853 (Minn. App. 2014), *review denied* (Minn. July 15, 2014). Rosenthal sought to subpoena several of her coworkers to testify about Rosenthal's conversations with Cardinal's nursing director. During the hearing, the ULJ acknowledged that Rosenthal had one version of events and Cardinal's

7

management had another but noted that "you were the only two [people] there." Rosenthal agreed that there were no other employees present when she spoke with Cardinal's nursing director. The ULJ denied Rosenthal's subpoena request, concluding that "[t]hese other people won't really help me know what happened because they weren't there either." A ULJ may deny a subpoena-request if "the testimony or documents sought would be irrelevant, immaterial, or unduly cumulative or repetitious." *Id.* Because Rosenthal's subpoena request was not likely to lead to the discovery of relevant evidence, the ULJ did not err in denying the request.

Lastly, Rosenthal argues that the ULJ committed an error of law by disregarding the statute of frauds. Rosenthal claims that if she had intended to retire, her agreement to separate from employment should have been reduced to writing. Cardinal's human resources manager testified that "there was never anything formally submitted . . . in writing for retirement," and explained that most of the conversation between Rosenthal and the nursing director was part of an "ongoing dialogue" on a face-to-face basis. The statute of frauds currently does not require an individual to reduce to writing their intention to retire. *See generally* Minn. Stat. § 513.01 (2014). Rosenthal has not provided any legal authority supporting her statute of frauds argument.

**Affirmed.**

8