*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

## STATE OF MINNESOTA
## IN COURT OF APPEALS
## A15-0703

Patrick H. Horan,
Relator,

vs.

Centerline Charter Corp.,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed November 9, 2015**
**Reversed**
**Chutich, Judge**

Department of Employment and Economic Development
File No. 33152080-3

Patrick H. Horan, Maplewood, Minnesota (pro se relator)

Centerline Charter Corp., St. Paul, Minnesota (respondent)

Lee B. Nelson, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

Considered and decided by Chutich, Presiding Judge; Ross, Judge; and Larkin, Judge.

UNPUBLISHED OPINION

**CHUTICH**, Judge

Relator Patrick H. Horan challenges a decision by an unemployment-law judge, affirmed on reconsideration, determining him ineligible for unemployment benefits. Respondent Minnesota Department of Employment and Economic Development (the department) has filed a letter requesting reversal of the unemployment-law judge's decision. Horan's employer, respondent Centerline Charter Corp., has not filed an appellate brief or a response to the department's letter. Because we agree with the department that the unemployment-law judge did not provide a fair hearing to Horan and that the unemployment-law judge's decision is not supported by the evidence in the record, we reverse.

## FACTS

Horan worked as a bus driver for Centerline beginning in September 2013. On December 12, 2014, Centerline suspended Horan for a period of 30 days. Horan applied for unemployment benefits, and the department issued an initial determination that he was ineligible for benefits because he was suspended for misconduct. Horan filed an administrative appeal, and a hearing was held before an unemployment-law judge on February 3, 2015. In the interim, on January 9, 2015, Centerline terminated Horan's employment.

Centerline has asserted three reasons for terminating Horan's employment: (1) dishonest reporting of time/"stalling for time"; (2) an altercation with a parent of student bus riders; and (3) littering from the bus. Both the written suspension notice

issued by Centerline on December 12, 2014, and Centerline's response to the department's request for information cite only the first reason. Centerline's letter terminating Horan's employment, however, cites all three reasons.

Centerline's assertion that Horan was dishonest in reporting his time and was "stalling for time" stems from two days on which Horan stopped at his home after completing the first of two assigned morning routes. On December 9, 2014, Horan drove route 509, dropping students off at their school at 8:05 a.m., and he then stopped at his home to use the bathroom before driving route 38, his second and final route of the day. Route 38 had only one student, who was not to be picked up until 8:50 a.m. According to Centerline GPS records, Horan's bus was parked near his home on December 9 from 8:14 a.m. until 8:36 a.m. During that time, Centerline unsuccessfully attempted to reach Horan to request his assistance with a student who had missed a bus. When Horan reconnected with dispatch, he was told that route 38 was cancelled that day, and he returned to the terminal. On December 11, 2014, Horan again drove route 509, and was notified after he completed that route that route 38 was cancelled. But he urgently needed to use the bathroom and so stopped at his home before returning to the terminal. GPS records indicate that his bus was parked near his home from 8:17 a.m. until 8:35 a.m.

Horan testified that he was not assigned a course of travel to get to the student on route 38 after completing route 509, and that the course he elected to travel took him within a couple of blocks of his home. Horan also testified that the time he spent at his home did not impact the amount of time that he reported on his time cards because

Centerline pays drivers for a minimum of two hours per route. Horan testified that neither of his stops at home caused him to exceed the two-hour minimum.

Centerline dispatcher Jim Weiss acknowledged the existence of the two-hour-minimum policy during his testimony, and did not dispute Horan's assertion that his total time on his routes (including the restroom stops) on December 9 and 11 did not exceed the two-hour minimum. Centerline officer Craig Rossow testified that drivers were expected to use the most efficient course of travel, to return to the terminal after completing routes, and to use the bathrooms at the schools or at the terminal. Rossow asserted that the most efficient route between Horan's two assigned routes would not take him near his home. But Rossow did not contradict Horan's testimony that the time he reported on December 9 and 11 was unaffected by his stops at home to use the bathroom.

The second reason cited by Centerline for Horan's discharge was a September 2014 altercation between Horan and the parent of students who rode bus route 18, which Horan was driving at that time. The parent was concerned that Horan was not stopping in the correct place to pick up the students and that Horan departed from the bus stop before the students were seated. The parent confronted Horan at the bus stop, and a disagreement ensued, during which Horan closed the doors of the school bus on the parent. Horan testified that it was an accident. Centerline removed Horan from route 18, but did not otherwise investigate the incident or address it with Horan.

The third reason cited by Centerline for Horan's discharge was a June 11, 2014, incident in which Horan was identified as having thrown seat cushions out of his bus and onto a residential lawn. Rossow testified that Centerline received a complaint from the

4

president of a neighborhood-watch group who had witnessed the littering and who identified Horan by bus number and gave a description that matched him. At the hearing, Horan denied the littering allegations. Centerline did not address the incident with Horan at the time because it was the end of the school year and it was uncertain if he would be returning the following year.

Horan not only disputes Centerline's characterization of the events cited as reasons for discharge, but also asserts that those events were not the true reason he was discharged.

## D E C I S I O N

The Minnesota Unemployment Insurance Law

> is remedial in nature and must be applied in favor of awarding unemployment benefits. Any legal conclusion that results in an applicant being ineligible for unemployment benefits must be fully supported by the facts. In determining eligibility or ineligibility for benefits, any statutory provision that would preclude an applicant from receiving benefits must be narrowly construed.

Minn. Stat. § 268.031, subd. 2 (2014). This court may remand a case for further proceedings or may "reverse or modify a[n unemployment-law judge]'s decision if the relator's substantial rights may have been prejudiced because the findings or decision are unsupported by substantial evidence or made upon unlawful procedure." *Icenhower v. Total Auto., Inc.*, 845 N.W.2d 849, 855 (Minn. App. 2014), *review denied* (Minn. July 15, 2014); *see also* Minn. Stat. § 268.105, subd. 7(a) (Supp. 2015).

5

## I.    Fair hearing

"The hearing must be conducted by an unemployment law judge as an evidence-gathering inquiry, without regard to a burden of proof." Minn. R. 3310.2921 (supp. 2014).

> Each party may present and examine witnesses and offer their own documents or other exhibits. Parties have the right to examine witnesses, object to exhibits and testimony, and cross-examine the other party's witnesses. The unemployment law judge must assist all parties in the presentation of evidence. The unemployment law judge must rule upon evidentiary objections on the record. The unemployment law judge must permit rebuttal testimony. Parties have the right to make closing statements. Closing statements may include comments based upon the evidence and arguments of law.

*Id.* "The unemployment law judge may limit repetitious testimony and arguments." *Id.* But "[t]he unemployment law judge must ensure that all relevant facts are clearly and fully developed." *Id.* "When the reason *for* the discharge is disputed, the hearing process must allow evidence on the competing reasons and provide factual findings on the cause of discharge." *Scheunemann v. Radisson S. Hotel*, 562 N.W.2d 32, 34 (Minn. App. 1997).

The department concedes that the unemployment-law judge violated his duty to conduct a fair hearing, and we agree. The unemployment-law judge not only failed in his statutory duty to assist Horan in developing the record to support his arguments, but almost completely precluded Horan from doing so on his own. The unemployment-law judge repeatedly obstructed Horan's attempts to cross-examine Centerline witnesses, both by explicitly cutting off the questioning and by discouraging Horan from asking further

6

questions. A number of times, the unemployment-law judge interrupted and cut off Horan as he attempted to cross-examine Centerline's witnesses on topics related to the contested issues and made comments suggesting that he was prejudging the evidence. The unemployment-law judge also abruptly terminated Horan's questioning of Centerline's two key witnesses and precluded Horan from asking any questions about the only topic on which a third witness had any personal knowledge. And the unemployment-law judge cut short Horan's closing argument, despite repeated assurances that Horan would be given an opportunity to present his side of the story and arguments regarding the true reason for his discharge.

Because the unemployment-law judge failed to conduct a fair hearing, we may reverse the ineligibility determination or remand for a new hearing. *See* Minn. Stat. § 268.105, subd. 7(d) (Supp. 2015); *see also Scheunemann*, 562 N.W.2d at 34 (reversing and remanding ineligibility determination because relator had not been allowed to present evidence disputing the reason for her discharge). The department asserts that the unemployment-law judge's decision also should be reversed because the evidence does not support the unemployment-law judge's finding that Horan was discharged for employment misconduct. We address that argument next.

## II.    Misconduct determination

An employee is ineligible for unemployment benefits if he was discharged from employment because of misconduct. Minn. Stat. § 268.095, subd. 4(1) (2014).

> Employment misconduct means any intentional, negligent, or indifferent conduct, on the job or off the job that displays clearly:

7

> (1) a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee; or
>
> (2) a substantial lack of concern for the employment.

Minn. Stat. § 268.095, subd. 6(a) (2014). "Whether an employee committed employment misconduct is a mixed question of fact and law." *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006). "Whether the employee committed a particular act is a question of fact" that we review to determine whether it is supported by substantial evidence. *Id.* "But whether the act committed by the employee constitutes employment misconduct is a question of law, which we review de novo." *Id.*

The department argues that the record does not support the unemployment-law judge's finding that Horan was "stalling for time" when he stopped at home to use the bathroom on December 9 and 11, 2014. We agree. In making the finding, the unemployment-law judge disregarded Horan's testimony, undisputed by the employer, that he was not required to travel any particular course to pick up the student on route 38, he was not scheduled to pick up that student until 8:50 a.m., and his stops at home did not impact his claimed hours because of Centerline's two-hour-minimum policy. Centerline witnesses testified that Horan violated its policies by failing to use the most efficient course of travel between routes, failing to return to the terminal after completing route 509, and using a different bathroom than one at the school or terminal. But none of these alleged failures are the asserted reason for discharge. Rather, Centerline asserted that

8

Horan was discharged for dishonest reporting of time, or "stalling for time." This asserted basis for discharge is not supported by the evidence in the record.

Respecting the other two incidents that Centerline asserted as reasons for Horan's discharge, the department argues, and we agree, that the evidence does not support the existence of a causal connection between those two incidents and Horan's discharge. The littering incident took place at the end of the 2013-14 school year, and Centerline not only failed to address the incident with Horan but rehired him as a driver for the 2014-15 school year. Similarly, no evidence suggests that Centerline ever addressed the September 2014 incident with Horan, and he was thereafter assigned additional routes to drive. Notably, neither the June 2014 incident nor the September 2014 incident was mentioned in the December 12, 2014 suspension notice or in Centerline's response to the department's request for information. Under these circumstances, we conclude the unemployment-law judge erred by finding these two incidents among the reasons for Horan's discharge. *See Redalen v. Farm Bureau Life Ins. Co.*, 504 N.W.2d 237, 239 (Minn. App. 1993) ("Lapse of time between the alleged misconduct and discharge, absent circumstances that would explain the delay, may tend to negate a causal relation between the misconduct and the discharge.").

Because the record evidence does not support the unemployment-law judge's findings that Horan was discharged for misconduct, we reverse the unemployment-law judge's ineligibility determination.

**Reversed.**